**UNITED STATES of America, Appellee,**

v.

**Alvin B. SAWYER, Appellant.**

Nos. 8263–8265.

United States Court of Appeals Fourth Circuit.

Argued March 28, 1961.

Decided Aug. 19, 1961.

Gerald F. White, Elizabeth City, N. C. (M. R. Harshaw, Elizabeth City, N. C., on brief), for appellant.

Harold T. Dodge, Asst. U. S. Atty., Burlington, N. C. (Julian T. Gaskill, U. S. Atty., Raleigh, N. C., on brief), for appellee.

Before SOBELOFF, Chief Judge, and SOPER and BOREMAN, Circuit Judges.

BOREMAN, Circuit Judge.

In No. 8265, Alvin B. Sawyer and codefendants, William Edward Griffin and Willie Swain, were indicted for unlawfully possessing, in violation of 26 U.S.C. § 5686(a), property "intended for use in violating the provisions of chapter 51 of Title 26, United States Code, or regulations issued pursuant thereto, to wit, 1260 pounds of sugar and nine 5-gallon jugs." The three were tried together before a jury and found guilty. Sawyer, in prosecuting this appeal, alleges error for failure to grant his motion for judgment of acquittal at the close of the Government's case, a similar motion at the conclusion of all the evidence, error in the admission of evidence and in denial of a motion to set aside the verdict and grant a new trial.

In cases Nos. 8264 and 8263, Sawyer had earlier been convicted of violations of the internal revenue laws relating to the manufacture of nontaxpaid whiskey, had been sentenced and placed on probation. Following the conviction and sentence in No. 8265, upon motion of the Probation Officer, Sawyer's probation was revoked and he was ordered to serve the sentences imposed in earlier cases. He is appealing from the court's orders of revocation of his probation.

Sawyer resides in a rural area about eight miles north of Elizabeth City, North Carolina, on the easterly side of U. S. Highway No. 17. Shortly after midnight and on the early morning of August 14, 1959, State Alcoholic Beverage Control officers, B. V. Halstead and A. D. Baum, and Jack Gaskill, a federal officer of the Alcohol and Tobacco Tax Unit of the United States Treasury Department, went to the neighborhood of the defendant's home where they secreted themselves across the highway from a driveway leading to Sawyer's garage. They were armed with a search warrant and had been keeping the property under surveillance for the past three nights.

The officers testified that, at approximately 2:30 o'clock in the morning, they observed an automobile traveling in a southerly direction along highway No. 17 and, when the automobile was from 200 to 300 yards away, the headlights were turned off, the car slowed down and continued along the highway toward them. On the southerly side of Sawyer's home, and about forty feet therefrom, was a garage approximately one hundred feet back from the highway. Through a gate opening in a fence on the Sawyer property, the car turned from the highway, proceeded down the driveway and stopped in front of the garage. The headlights were still off. One of the occupants got out of the car and, without the aid of any light, opened the double sliding garage doors. The car, with lights still off, was driven into the garage and the doors were closed from the inside.

Officers Halstead and Baum left their position where they had been hiding and walked up the driveway to the garage. Baum remained at the front and Halstead went to the rear where he stood at an open door. Halstead could hear two men counting and he observed them removing sacks and cartons of sugar from the back seat and trunk of the car. Through a crack in the garage doors, Baum observed two men handling sugar and glass jugs. In the unloading operations the two men, who were identified as William Edward Griffin and Willie Swain, were using flashlights. The officers entered the garage and placed Griffin and Swain under arrest. The officers testified that there were about 1260 pounds of sugar and nine 5-gallon jugs which had been unloaded and arranged on either side of the automobile on the garage floor. The jugs had the odor of and contained drippings from nontaxpaid whiskey. Griffin and Swain were placed in charge of Officer Gaskill, and Officers Halstead and Baum went to Sawyer's residence where, after knocking on the outside door, Sawyer appeared at the front door dressed in trousers and bedroom slippers. He stated that he had been in bed and asleep and that their knocking had aroused him. The officers told Sawyer that they wanted to talk to him about the sugar in the garage and he said he didn't know anything about it. The officers testified that Sawyer went with them to their car where Griffin and Swain were being detained and asked the two boys what they meant by bringing the materials to his garage; that the boys said, "We thought it was the place to bring it but I reckon we were wrong." Upon being notified that a warrant would be issued for his arrest, Sawyer agreed to and did surrender himself at Elizabeth City about nine o'clock in the morning.

Sawyer's property lies between two parallel canals which extend from the easterly side of highway No. 17 into the Pasquotank River some distance to the east of Sawyer's residence. During the daylight hours of August 14, 1959, the

officers returned and inspected the Sawyer premises. Officer Halstead observed a path made by wheelbarrow tracks which led from the rear of Sawyer's garage in a northerly direction through a gate along the rear or side of Sawyer's yard to an area which had been used as a garden and to the bank of the canal on the north side of the property where a rowboat, painted a dark green color, was moored in the water. The distance along the path from the rear of the garage to the point where the boat was moored in the canal was stated to be 100 to 150 feet. About 150 yards north of the Sawyer home and on the easterly side of highway No. 17 was a combination grocery store and service station operated by G. M. Hudson. To the rear of this establishment there was a boat basin which connected with the canal and Hudson testified that people used a boatdock or ramp at this basin in launching boats. At the time of the officers' visit, they found two small boats full of water and one halfway up on the bank. None of these boats was painted green.

Using a government boat, the officers explored the canal from the Sawyer premises toward the Pasquotank River. Over objection, they were permitted to testify that, at a point approximately 400 yards down the canal, a camouflaged entrance was discovered on the northerly side of the canal which concealed a path and boarded walkway leading approximately 75 yards through the swamps and woods to an illicit distillery. At the still site, the officers found twenty-six 55-gallon barrels used in fermenting mash and forty pounds of sugar. The still was not in operation. Further, over objection, Halstead testified, on the basis of long experience in investigating illicit distilleries, that fifty pounds of sugar are required to "mash in" one 55-gallon fermenting barrel and that none of these barrels found at the distillery had been "mashed in"; that it would require exactly 1300 pounds of sugar to "mash in" these barrels and that the sugar found in Sawyer's garage, with the forty pounds found at the still, amounted to exactly 1300 pounds.

Officer Gaskill was asked questions and gave answers as follows:

"Q. Would you describe what the term 'mashing in' means. A. Mixture of sugar, meal, yeast and other ingredients as required to make mash.

"Q. Is sugar an essential ingredient? A. Yes, in this section I would say yes; I understand it is possible to make it without the use of sugar, but in this section they generally always use it, wherever a still is we find sugar. * * *"

There was no objection to this testimony.

It was shown that the only means by which access could be had to the still from the canal was the still path hereinbefore described. Officer Gaskill testified that on a tree at the entrance to the still path he found dark green paint. Sawyer was not engaged in the wholesale or retail merchandising business and did not own or operate a store. Witness Hudson testified that he did not order the sugar found in Sawyer's garage in connection with his grocery business. Investigation by the officers indicated that the car in which the materials were transported was registered in a fictitious name.

Over objection, Officer Gaskill further testified that within the previous twelve months he had found another distillery in this general area but that it was located at least twice the distance from the Sawyer residence as the one found on August 14, 1959. In overruling the objection to this testimony and the testimony concerning the distillery and property discovered near the canal, the court told the jury: "I now instruct you that evidence, if any, relating to the location of illicit distilleries in this locality is admitted for the sole purpose and is to be considered by you only as it may relate to the intent of the defendants." Neither the defendant, Sawyer, nor his codefendant, Griffin, testified at the trial.

The other defendant, Swain, testifying in his own behalf, stated in substance as

follows: He was then employed by the Government in the Naval Supply Center at Norfolk, Virginia; shortly before August 14, 1959, an acquaintance known to him only as "Pete" employed him to drive a car on this particular trip; Pete instructed him that he, Pete, would be driving ahead and at a certain time and place would turn and flash three light signals; Swain would then turn into the next "path" to his right; he discovered the sugar in the car only after he was driving on the highway and he had heard that "hauling too much sugar in an automobile was against the law"; he became alarmed; some several miles north of the Sawyer residence, he observed his codefendant, Griffin, an acquaintance, walking in the darkness in a northerly direction along the highway; he stopped and persuaded Griffin to accompany him, promising to return Griffin to his home; the leading car disappeared and gave no light signals; he observed lights to the rear which appeared to be following and he became more frightened; he speeded up, suddenly turned his lights off and drove over to the Hudson service station lot and stopped for two or three minutes; he then continued slowly along the highway in search of a place to unload the materials and make his getaway; upon seeing the Sawyer garage he decided to unload and return home; he did not know Sawyer and had no instructions to deliver the cargo there but did so only when he became frightened by following lights. He admitted that he had driven that highway on several prior occasions, had some familiarity with the area and knew the location of the service station and two or three other houses.[1]

Counsel for the defendants developed, principally by the testimony of the witness Hudson and by cross-examination of the officers, that the canal between the Sawyer and Hudson properties was sometimes used by strangers for boating and fishing; that access to the canal could be had from the Pasquotank River and that the area back of the Sawyer property was sometimes used by hunters. This evidence was obviously intended to persuade the jury, as well as the court, that persons other than Sawyer had easy access to the canal and to the distillery site.

Sawyer contends that the court erred in the admission of the testimony concerning the distillery discovered by the officers on August 14, 1959, the equipment and materials found at the site, the green paint, the quantity of sugar required to "mash in" the fermenter barrels; also the testimony concerning the discovery of another still within twelve months prior to August 1959.

■ In a prosecution under 26 U.S.C. § 5686(a), the burden is upon the Government to prove (1) possession of the property, and (2) intention that the property is to be used in violation of any provision of chapter 51 of Title 26 U.S.C., or any regulation issued pursuant thereto.[2]

---

1. On cross-examination, Swain testified in response to questions as follows:
"Q. You didn't stop until you got down to the garage, did you? A. Not completely.
"Q. You didn't have any trouble driving over that driveway, did you? A. Not too hard; I finally managed to get in there.
"Q. You have been there before? A. *I can't recollect being there.*
"Q. Who got out—you or Griffin? A. I got out.
"Q. You opened the garage door? A. I opened the door.
"Q. You did that without any light? A. That's right.
"Q. Without your headlights? A. No lights at all.

"Q. Those rollers make a lot of noise opening the garage? A. If you are careful you can cut the noise down.
"Q. You drove in without lights? A. Yes.
"Q. You didn't scrape the car? A. I didn't check the car.
"Q. You did all that and you say you have never been in the garage before. A. *I can't recall stopping there."* (Emphasis supplied.)

2. United States v. Skinner, 2 Cir., 1959, 272 F.2d 607, 608, certiorari denied 362 U.S. 902, 80 S.Ct. 611, 4 L.Ed.2d 607. It is to be noted that § 5686(b) therein discussed was similar to present § 5686 (a).

█ "Possession" means the act or state of possessing and may be either actual or constructive. Ownership is not an essential element of "possession." However, possession, when charged as a crime, must be conscious. Ordinarily, if goods or merchandise were delivered to a man's premises by his arrangement and with his knowledge and consent, he would then have possession within the meaning of the statute.

█ The question of possession was submitted for jury determination,[3] and we are of the opinion that the evidence as to possession by Sawyer was sufficient to warrant such submission. It is not disputed that the materials were transported to Sawyer's garage and there unloaded in the dead of night. There was testimony from which the jury could have found that the automobile occupied by Swain and Griffin slowed down when the vehicle was within two or three hundred yards of Sawyer's residence and the vehicle lights were then extinguished; that without perceptible hesitation, the automobile was then driven through the Sawyer gate and up the driveway to the garage, where one of the occupants of the car opened the garage doors, the car was driven in and the doors were closed from the inside; that Griffin and Swain, each using a flashlight, unloaded the car, arranged the containers of sugar on either side of the automobile and counted them as they did so. If the jury believed this testimony, the circumstances therein recited would appear to be in conflict with the testimony of Swain who was apparently endeavoring to convince the court and jury that he was unfamiliar with the Sawyer premises, that he was a frightened individual seeking to hastily dispose of a cargo the transportation of which he believed to be unlawful, and make a getaway. The jurors may well have decided that the actions of Swain and Griffin were not those of frightened individuals entering strange premises, intending to quickly abandon a contraband cargo and retreat, but that their conduct supported the strong inference that they were making delivery pursuant to plan.

Having concluded, as the jury obviously did, that possession had been established, the next step was to determine Sawyer's intent as to the use of the sugar and glass jugs.[4]

---

3. The court charged the jury: "To convict the defendants, or either of them, as charged in the indictment the government must convince you beyond a reasonable doubt of two things: first, that the defendants, or either of them, had in their possession the property described in said count; and, second, that such property was intended for use in violating the Internal Revenue laws. You will note that the indictment charges that the defendants did unlawfully possess certain property intended for illegal use. The law recognizes two kinds of possession, actual possession and constructive possession. A person who knowingly has direct physical control over a thing at a given time is then in actual possession of it. A person who, although not in actual possession, knowingly has the power at a given time to exercise dominion or control over a thing is then in constructive possession of it. The law recognizes, also, that possession may be sole or joint. If one person alone has actual or constructive possession of a thing, possession is sole. If two or more persons share the actual or constructive possession of a thing, their possession is joint. If you find from the evidence beyond a reasonable doubt that the defendants, either alone or jointly with others, on the 14th day of August, 1959 had actual or constructive possession of materials intended for use in violating the Internal Revenue laws relating to liquor as alleged in the indictment, then you may find that such materials were possessed by the defendants within the meaning of the word 'possessed' as used in these instructions."

4. The court told the jury: "In determining the issue as to intent, the jury are entitled to consider any statements made and acts done or omitted by the defendants and all facts and circumstances in the evidence of this case which may aid in your determination of the state of mind of the defendants and each of them. The statute makes the intent with which the materials are possessed in this case an element of the crime. This intent must exist prior to or current with the possession of the materials. If the materials were possessed with no intent to use them

■ Sawyer was convicted upon evidence which was almost wholly circumstantial but the court, after explaining fully the meaning of "reasonable doubt," made it perfectly clear that the jury must be convinced, beyond a reasonable doubt, of Sawyer's guilt. Defendant contends that in order to justify a conviction on circumstantial evidence, it is necessary that the proven circumstances be such as to exclude every reasonable hypothesis but that of guilt. In Holland v. United States, 1954, 348 U.S. 121, 139, 140, 75 S.Ct. 127, 137, 99 L.Ed. 150, the court said:

"* * * The petitioners assail the refusal of the trial judge to instruct that where the Government's evidence is circumstantial, it must be such as to exclude every reasonable hypothesis other than that of guilt. There is some support for this type of instruction in the lower court decisions [citing cases], but the better rule is that where the jury is properly instructed on the standards for reasonable doubt, such an additional instruction on circumstantial evidence is confusing and incorrect, [citations omitted].

"Circumstantial evidence in this respect is intrinsically no different from testimonial evidence. Admittedly, circumstantial evidence may in some cases point to a wholly incorrect result. Yet this is equally true of testimonial evidence. In both instances, a jury is asked to weigh the chances that the evidence correctly points to guilt against the possibility of inaccuracy or ambiguous inference. In both, the jury must use its experience with people and events in weighing the probabilities. If the jury is convinced beyond a reasonable doubt, we can require no more."

■ There was evidence of the following facts. Sawyer was not engaged in the mercantile business and it would be a matter of common knowledge that 1260 pounds of sugar would be much more than necessary to meet the normal requirements of one family. On the day the materials were unloaded, a still was discovered approximately 500 yards from Sawyer's residence. It was shown that 1300 pounds of sugar were required to "mash in" the fermenter barrels and that the total amount of sugar found at the still site and in Sawyer's garage was exactly 1300 pounds. A path was discovered leading from the rear of the defendant's garage to the canal along which the still was found, and a boat painted a dark green color was moored at the end of the path. Paint similar in color was found on a tree along the entrance to the still path. The glass jugs which were transported with the sugar contained drippings and the odor of nontaxpaid whiskey.

It has been held that where a case rests upon circumstantial evidence, the trial court is allowed a broad discretion in admitting proof of surrounding circumstances. In Shreve v. United States, 9 Cir., 1939, 103 F.2d 796, 803, the court said: "Intent is a state of mind difficult of precise proof and, therefore, evidence

in violating any provision of the Internal Revenue laws relating to liquor, no crime was committed. It is the possession of materials intended for such illegal use which renders the act criminal. During the course of the trial evidence that illegal distilleries were operating in the general locality of the premises owned and occupied by the defendant Sawyer within one year prior to the date of the arrests in this case was admitted for a restricted purpose. The defendants are not indicted for the possession or operation of any illicit still and evidence that

illegal distilleries were operating within this locality is not to be considered by you as indicating that the defendants, or either of them, possessed, operated or had any interest in such stills. You may consider such evidence only in determining the state of mind or intent with which such materials were possessed by the defendants, if you should find that such materials were in fact possessed by them."
Note: There were no objections by either side to any portion of the court's charge to the jury.

of other and surrounding circumstances may be received for the purpose of proving such intent." See also McCoy v. United States, 9 Cir., 1948, 169 F.2d 776. In Clark v. United States, 5 Cir., 1923, 293 F. 301, at page 305, it is stated: "It must be borne in mind that the testimony in the case was almost entirely circumstantial, and under that state of the case the trial court necessarily is allowed a broad discretion in admitting testimony of facts having a bearing on the proof of the guilt or innocence of the accused." See also Merrill v. United States, 5 Cir., 1930, 40 F.2d 315. In Clune v. United States, 1895, 159 U.S. 590, 592, 593, 16 S.Ct. 125, 126, 40 L.Ed. 269 the Court held: "It is familiar law that where a case rests upon that character of evidence [circumstantial] much discretion is left to the trial court, and its ruling will be sustained if the testimony which is admitted tends even remotely to establish the ultimate fact." And in Rumely v. United States, 2 Cir., 1923, 293 F. 532, 533, certiorari denied 263 U.S. 713, headnote 10, 44 S.Ct. 38, 68 L.Ed. 520, is as follows: "Great latitude is allowed in the reception of circumstantial evidence, especially where it is necessary to show a particular intent in a party as an essential ingredient of the crime with which he is charged." See also Beard v. United States, 65 App.D.C. 231, 82 F.2d 837, 843, certiorari denied 298 U.S. 655, 56 S.Ct. 675, 80 L.Ed. 1382.

The evidence concerning the discovery of the still on the date of the defendant's arrest goes beyond mere proof of the character of the area. A small quantity of sugar was already at the still and a large amount was necessary to enable the operator to proceed. The "mashing in" process could be commenced when sugar was available. These circumstances were so nearly related to the offense charged in time and place as to provide strong support for the inferences that the sugar was intended for use in the operation of *that particular still* and the whiskey jugs were intended to contain the product. It was not error to admit this evidence as bearing upon intent.

The evidence as to the discovery of another still at a distance of approximately 1,000 yards from the Sawyer premises within the preceding twelve months, at most, would tend to show that this general area was one in which the illegal manufacture of whiskey had been carried on in recent months, and to support the inference that such a large quantity of sugar might more likely be used for illicit distilling purposes in such a neighborhood than in an area where there were no such operations. If it was error to admit such evidence as too remotely related in time and place to the charge contained in the indictment, the error was harmless and will be disregarded.[5] Officer Gaskill testified that in this particular section sugar was generally used in the making of mash—"wherever a still is we find sugar." There was no objection to this testimony. Thus, the character of the area was already clearly established by the discovery of the still on the same day the materials were delivered and by the testimony of the officer.

The contention that the evidence was insufficient to go to the jury and to support the conviction is without merit. In appraising the sufficiency of the evidence, it is not necessary that this court be convinced beyond a reasonable doubt of the guilt of the defendant. On the motions for judgment of acquittal, the question is whether the evidence, viewed in the light most favorable to the prosecution, is such that a jury might find the defendant guilty beyond a reasonable doubt. Bell v. United States, 4 Cir., 1950, 185 F.2d 302. The motions for judgment of acquittal and for a new trial were properly denied.

5. Rule 52(a), Federal Rules of Criminal Procedure, 18 U.S.C.:
 "Harmless Error. Any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded."

In brief and argument, defense counsel admit that if the conviction in No. 8265 is upheld, the appeals from the court's orders of revocation of probation in Nos. 8264 and 8263 must fail.

Nos. 8265, 8264 and 8263 affirmed.