THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* RAFAEL RUIZ VÉLEZ ET AL., Defendants and Appellants.

No. 17388. Decided May 24, 1962.

*José Torres Ortiz* and *Julio Suárez Garriga* for appellants. *J. B. Fernández Badillo, Solicitor General,* and *Arturo Estrella, Assistant Solicitor General,* for The People.

Division composed of Mr. Acting Chief Justice Pérez Pimentel, Mr. Justice Blanco Lugo, and Mr. Justice Dávila.

MR. JUSTICE DÁVILA delivered the opinion of the Court.

The four defendants arrived together in Mayagüez. In this city they went to a hotel and asked for two rooms. The police intervened with them when they were trying to rent the rooms and from there they went to police headquarters. They consented voluntarily to the search of the automobile in which they were traveling, and the driver handed the key of the trunk of the vehicle, where the police found eight bottles containing a mixture of gasoline, oil, and tetraethyl, which is used as incendiary bomb commonly known as Molotov bombs. They were charged with a violation of § 12 of Act No. 67 of May 13, 1934, 25 L.P.R.A. § 492.[1] Having

---

[1] The appellants were charged with a violation of the Weapons Law, 25 L.P.R.A. § 492, in its felony and misdemeanor aspects, and were acquitted when a question of law raised by the defense was sustained. The weapons were seized in the hotel room before they were definitively settled therein.

been found guilty by a jury, the court sentenced them to serve from 5 to 10 years' imprisonment in the penitentiary.

Of the four defendants,[2] three did not offer any evidence and the other rested his defense on his own testimony. In support of their appeals, the appellants charge the commission of four errors.

1. We turn to consider first the error bearing on the ruling of the trial court dismissing a motion for peremptory acquittal filed by the defense at the close of the evidence for the prosecution.

The defendants were charged with a violation of § 12 of the Explosives Act because they "illegally, willfully, maliciously, and criminally had in their possession eight (8) one-quart bottles containing explosive substances ... with the intent to use them for the purpose of inflicting bodily injury and to injure or destroy property." The appellants maintain that "the offense is committed only if two elements are present, the possession and the intention, which in this case is a specific intent." They invoke the case of *People* v. *Walker*, 54 P.R.R. 548 (1939). In that case the information read in its pertinent part as follows: "illegally, voluntarily and maliciously, did have in his possession ingredients or substances that intermingled constitute a strong explosive, with the intention of terrorizing or causing damage to any property." We reversed the judgment of the trial court dismissing a demurrer of insufficiency. We rested on the fact that the Act, as drawn up, did not punish the possession of substances which by themselves were not explosives, although when intermingled produced an explosive.

After invoking the *Walker* case, the appellants invite our attention to the testimony of the chemist, witness for the prosecution, who analyzed the contents of the bottles seized. This witness testified that the matter which the eight bottles contained "is used to burn, to set fire, but that it is not an explosive."

---

[2] After appealing, one of the defendants desisted from his petition.

Section 12 was worded as follows when the facts with which *Walker* was charged occurred: "Any person who shall have in his possession dynamite or other explosive chemical or substance, with intent to use the same for the purpose of inflicting bodily injury..." However, in 1951 it was amended by Act No. 13 of that year (Sp. Sess. Laws, p. 392) to read as follows: "Any person who shall have in his possession dynamite or other chemical explosive or explosive substance, or substances which when mixed form an explosive, with intent to use the same for the purpose of inflicting bodily injury..." An amendment was also incorporated in § 2 of the Act which defines the term "explosive or explosives." The amendment consisted in adding the following: "That for the purposes of Sections 11, 12 and 12A hereof, the term 'explosive or explosives' shall also comprise and include gasoline, petroleum, naphtha, turpentine, benzine, carbon disulphide, ether, petroleum ether, kerosene or any other inflammable substance which by itself or mixed with any other substance may cause injury to any person or property, provided any of said substances is possessed with the intention expressed in Section 12 hereof."

■ Thus, the Legislative Assembly amended the Act in order to supply the deficiencies pointed out in the *Walker* case, and went even further in not requiring that the mixture of the substances produce an explosive and only requiring that they may cause injury to persons or to property. The offense established was the possession of the substances specified, or any other inflammable substance "which by itself or mixed with any other substance may cause injury to any person or property." We know that the chemist testified that the substance contained in the eight bottles seized, a mixture of gasoline, oil, and tetraethyl, was used to burn or to set fire.

■ Section 13 of Act No. 67 of 1934, 25 L.P.R.A. § 494, provides that "At the trial of any person charged with having committed any of the offenses mentioned in Section 12

hereof, proof of possession of any such explosives shall be prima facie evidence of the unlawful intent, and the burden of proof shall be on the defendant to show that the possession was lawful." The evidence for the prosecution showed that the four defendants went around together, that incendiary bombs known as Molotov bombs were seized in their automobile; that by virtue of the 1951 amendment they are considered as explosives for the purposes of Act No. 67 of 1934. And we have seen that § 13 of that Act provides that the possession of explosives shall be "prima facie evidence of the unlawful intent, and the burden of proof shall be on the defendant to show that the possession was lawful." The purpose of the transcribed provision is to protect the citizen. The Legislative Assembly could have provided that the mere possession of explosives, as defined in the Act, constitutes an offense without the necessity of establishing the intention for which they are possessed. It has so provided in the offenses of adulteration of milk and carrying of weapons. *People* v. *Andrades*, 83 P.R.R. 818 (1961); *People* v. *Rivera*, 75 P.R.R. 399 (1953), and *People* v. *Bou*, 64 P.R.R. 445 (1945). See, also, *United States* v. *Balint*, 258 U.S. 250 (1922); 1 WHARTON, Criminal Law & Procedure, § 60 (1957); *cf. Smith* v. *California*, 361 U.S. 147 (1959); *Holdridge* v. *United States*, 282 F.2d 302 (8th Cir. 1960). However, since the Legislative Assembly was aware that explosives may be used for industrial purposes, etc., it chose to establish a presumption of prima facie intention, in which case it may be shown that the possession was for lawful purposes. If the evidence introduced by the defendants created in the jury a reasonable doubt as to whether the possession of the incendiary bombs was lawful, in that case the defendants should be acquitted. In this case the State established the possession. That was sufficient. The trial court did not err in denying the motion for peremptory acquittal.

468

■ 2. The appellants allege that it was error to admit in evidence the weapons which they allegedly carried, a poniard, a pistol, and several bullets. But the fact is that the defendants were acquitted of the offenses of carrying weapons with which they were charged, wherefore it would be academic to discuss the question raised by this error. However, an error is assigned in connection with this evidence which in our opinion was committed by the court: in permitting the weapons offered in evidence to be handed to the jury. Obviously, this evidence should not have been given to the jury, but we believe that the error committed was harmless inasmuch as the judge acquitted the defendants of the misdemeanor in the jury's presence and instructed it to acquit them of the offense of felony.

3. The challenge on the admission of the bottles seized is without merit. The evidence showed that the defendants arrived together in Mayagüez and that they went together to the hotel and from there to police headquarters. The eight bottles were seized in the automobile in which the defendants were traveling. This was sufficient to establish the connection between the defendants and the eight bottles seized in the vehicle.

■ 4. We turn to consider another question raised. The appellants allege that "there being evidence consisting of the sworn statement of Frank Rodríguez Morales and of witness Rafael Ruiz Vélez, who were coauthors or principals of the offenses charged, the court should have given specific instructions to the jury on corroboration even though the defense did not request any." But the fact is that from a slight examination of the statement given by codefendant Rodríguez Morales and the testimony of Ruiz Vélez, we find that they do not constitute at all evidence against the codefendants, nor against the declarants themselves. The statement of Rodríguez Morales and the testimony of Ruiz Vélez are exculpatory. For that same reason it was not necessary to instruct the jury in the sense that the statement of Ruiz

Vélez did not constitute evidence against the other defendants. Nothing contained in his testimony incriminated the other defendants.

5. The appellants object to the instructions transmitted by the trial judge on "intent to commit the offense charged." In this connection, the judge instructed them as follows:

 "I must instruct you that since the intention in every case is a state of the mind, unless the intention for possessing a thing is shown, you would not know which is the intention for possessing it. However, the intention, according to the law and the authorities, may be inferred from the circumstances surrounding the commission of the offense, the manner and circumstances in which the thing, the matter, the thing itself which allegedly constitutes the offense, was being transported. You may see it, feel it; you may infer it from the thing itself and from all the circumstances surrounding the offense, including the objective proof corroborated by the oral and documentary evidence offered, so that you may be able to weigh as a whole the circumstances of the case in order to make a finding on the intention with which the object which allegedly constitutes an explosive in this case is possessed."

These instructions were beneficial to the defendants. The judge did not instruct them properly what was the law. We have already seen that § 13 of Act No. 67 of 1934, provides that the possession of "explosives," as defined in the Act and specifically in the cases of the offense charged to the appellants, "shall be prima facie evidence of the unlawful intent," and that "the burden of proof shall be on the defendant to show that the possession was lawful." The judge did not instruct the jury on any of these. And let us recall that three of the defendants did not offer any defense evidence. They did not explain the purpose in possessing the material seized. They had an opportunity to do so and preferred to rely on the motion for peremptory acquittal. The jury did not give credit to the only defendant who introduced evidence, his own testimony.

6. The appellants argue in their brief that "we believe that the entire evidence offered by The People is not so strong and convenient [*sic*] as to exclude the hypothesis, beyond a reasonable doubt, that the defendants had no knowledge of the existence of the so-called Molotov bombs, or if on the contrary they had such knowledge, that they were not aware of the particular purpose to which they would be devoted." They further argue that "in this case, however, all the defendants are charged with being authors in the commission of an offense, and they have been convicted, if not entirely, mostly on circumstantial evidence." We believe that in order to find all the defendants guilty on circumstantial evidence, it is necessary that all the circumstances proved be present and not inconsistent with any other conclusion or reasonable hypothesis of evidence. In support of the latter, they invoke *People* v. *Almodóvar*, 71 P.R.R. 19 (1950), and *People* v. *Arteaga*, 70 P.R.R. 635 (1949).

We have already seen that Act No. 67 of 1934 establishes a presumption of intention as an ingredient of the offense of possessing explosives. Regarding the degree of evidence necessary to convict on circumstantial evidence— conceding, for the sake of argument, that the evidence offered were of such character—the appellants' position disregards our ruling in *People* v. *Bonilla*, 78 P.R.R. 144 (1955), following the case of *Holland* v. *United States*, 348 U.S. 121 (1954), from which we quote the following:

█ " . . The petitioners assail the refusal of the trial judge to instruct that where the Government's evidence is circumstantial it must be such as to exclude every reasonable hypothesis other than that of guilt. There is some support for this type of instruction in the lower court decisions, *Garst* v. *United States*, 180 F. 339, 343; *Anderson* v. *United States*, 30 F.2d 485–487; *Stutz* v. *United States*, 47 F.2d 1029, 1030; *Hanson* v. *United States*, 208 F.2d 914, 916, but the better rule is that where the jury is properly instructed on the standards for reasonable doubt, such an additional instruction on circumstantial evidence is confusing and incorrect, *United States* v.

*Austin-Bagley Corp.,* 31 F.2d 229, 234, cert. denied, 279 U.S. 863; *United States* v. *Becker,* 62 F.2d 1007, 1010; 1 Wigmore, Evidence (3d ed.) §§ 25–26.

"Circumstantial evidence in this respect is intrinsically no different from testimonial evidence. Admittedly, circumstantial evidence may in some cases point to a wholly incorrect result. Yet this is equally true of testimonial evidence. In both instances, a jury is asked to weigh the chances that the evidence correctly points to guilt against the possibility of inaccuracy or ambiguous inference. In both, the jury must use its experience with people and events in weighing the probabilities. If the jury is convinced beyond a reasonable doubt, we can require no more."

After copying the foregoing, we said in *Bonilla:*

"Although this is a question of local law, we think the rule laid down by the *Holland* case is the better rule and we shall follow it. The *Almodóvar* case and similar cases are therefore expressly overruled. Hereafter in weighing the evidence in a criminal case—and in instructing a jury on the question—trial judges are not to use the test that in order to justify conviction circumstantial evidence must be inconsistent with any other reasonable hypothesis of innocence. On the contrary, as pointed out in the *Holland* case, the problem is if the evidence —whether it be circumstantial or testimonial—establishes the defendant's guilt beyond a reasonable doubt."

See, also, *United States* v. *Sawyer,* 294 F.2d 24, 30 (4th Cir. 1961); *United States* v. *Hamrick,* 293 F.2d 468, 470 (4th Cir. 1961); *United States* v. *Comer,* 288 F.2d 174, 176 (6th Cir. 1961); *Continental Baking Co.* v. *United States,* 281 F.2d 137, 146 (6th Cir. 1960); *United States* v. *Olivo,* 278 F.2d 415, 418 (3d Cir. 1960); cf. *Curtis* v. *United States,* 297 F.2d 639 (5th Cir. 1961); *Riggs* v. *United States,* 280 F.2d 949, 955 (5th Cir. 1960).

7. Lastly, the appellants allege that "the jury's verdict was contrary to the evidence, which is insufficient at law." The foregoing disposes of this assignment.

The judgments rendered by the Superior Court, Mayagüez Part, on March 14, 1961, will be affirmed.