**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

JORGE MELENDEZ, as personal
representative of the estate of Jose
Ines Melendez; MARIA MARTINEZ,
individually and as parent and next
friend of Christian Martinez
Melendez, Steffany Melendez and
Brian Melendez,
Plaintiffs-Appellants,

v.

HOWARD COUNTY GOVERNMENT;
DANIEL G. MERSON; ALPHONSO F.
CONNER,
Defendants-Appellees,

and

JERRY PRICE, Police Officer, in both
his official and individual
capacities; VICTOR RIEMER, Howard
County Police Officer, in both his
official and individual capacities;
DAVID SHAMAKER, Howard County
Police Officer, in both his official
and individual capacities; MICHAEL
VICHICH, Howard County Police
Officer, in both his official and
individual capacities; UNKNOWN
HOWARD COUNTY EMERGENCY
MEDICAL PERSONNEL; AIMEE C.
GREENBERG,
Defendants.

No. 96-2709

JORGE MELENDEZ, as personal
representative of the estate of Jose
Ines Melendez; MARIA MARTINEZ,
individually and as parent and next
friend of Christian Martinez
Melendez, Steffany Melendez and
Brian Melendez,
Plaintiffs-Appellants,

v.

HOWARD COUNTY GOVERNMENT;
DANIEL G. MERSON; ALPHONSO F.
CONNER,
Defendants-Appellees,

and

JERRY PRICE, Police Officer, in both
his official and individual
capacities; VICTOR RIEMER, Howard
County Police Officer, in both his
official and individual capacities;
DAVID SHAMAKER, Howard County
Police Officer, in both his official
and individual capacities; MICHAEL
VICHICH, Howard County Police
Officer, in both his official and
individual capacities; UNKNOWN
HOWARD COUNTY EMERGENCY
MEDICAL PERSONNEL; AIMEE C.
GREENBERG,
Defendants.

No. 97-1062

Appeals from the United States District Court
for the District of Maryland, at Baltimore.
Marvin J. Garbis, District Judge.
(CA-94-3550-MJG)

2

Argued: June 6, 1997

Decided: August 18, 1997

Before HALL and NIEMEYER, Circuit Judges, and
PHILLIPS, Senior Circuit Judge.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Thomas Bennett Morrison, TRAPENI, ROMERO &
MORRISON, P.C., Fairfax, Virginia, for Appellants. Rebecca A.
Laws, Senior Assistant County Solicitor, Ellicott City, Maryland,
for Appellees. **ON BRIEF:** Barbara M. Cook, Howard County Solicitor,
Ellicott City, Maryland, for Appellees.

_____

Unpublished opinions are not binding precedent in this circuit. See
Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

The Melendez family sued Howard County, Maryland, and several
of its emergency response personnel for the wrongful death of Jose
Melendez, who died while in the County's custody during transport
to a hospital. The family brought their action under 42 U.S.C. § 1983
for deliberate indifference to Jose Melendez's medical needs and
under Maryland common law for gross negligence, in accordance
with the partial immunity Maryland law affords to emergency medi-
cal care providers. See Md. Code Ann., Cts. & Jud. Proc. § 5-309.

3

The district court entered summary judgment in favor of the defendants, and we affirm.

I

On Christmas Eve of 1993, Jose Melendez, who was attending a family gathering at the house of relatives in Elkridge, Maryland, drank a large quantity of alcohol and became intoxicated. When he indicated an intent to drive home in his state of intoxication, a dispute erupted between Melendez and his relatives, in the course of which Melendez tossed aside his 18-month old son Brian, injuring him. Because of Melendez's violent behavior, a relative called the police, who arrived shortly thereafter.

Melendez yelled profanities at the police and resisted their attempts to arrest him. Four officers eventually subdued Melendez, but in the course of the struggle, they heard his elbow pop. Although Melendez denied any need for medical attention, the officers decided to have him evaluated at a nearby hospital. Believing that Melendez was too violent to be transported to the hospital in an ordinary police car, the police decided that their options included obtaining the police "prisoner van" or transporting Melendez by ambulance with the use of restraints. An ambulance had already been called for the injuries to Brian, and police asked the ambulance staff whether they had a canvas full-body restraint device known locally as the "blue monster." A second ambulance arrived which had such a restraint.

By the time that the second ambulance arrived, personnel on the scene included Sgt. Daniel Merson of Howard County Fire and Rescue, a certified EMT-P (advanced life support skills), who arrived independent of the ambulances; Elkridge Volunteer Fire Department ambulance driver Aimee Greenberg; and Alphonso Conner, EMT-A, the emergency technician staffing the ambulance. Greenberg produced the blue monster, a large canvas tarp to which several straps were affixed, and several police officers as well as EMT Conner secured Melendez for transportation to the hospital.

Melendez was placed face down on a standard stretcher with his arms outstretched above his head. The canvas restraint was then placed over him and the straps affixed so that Melendez was sand-

4

wiched between the canvas and the stretcher. The tarp extended over the greater part of Melendez's body, reaching from his feet to the base of his neck. The ambulance then departed for Howard County General Hospital with EMT Conner attending and police officer Victor Riemer riding in the ambulance.

In the course of the ride, EMT Conner noticed that Melendez ceased to struggle against the restraints, although Conner did not perceive this as a sign of distress. Because of the position of Melendez's body, Conner could not see Melendez's face, nor could he easily access normal locations for taking a pulse. He did, however, perform a capillary refill test during the transport, pushing on Melendez's finger nail bed and watching as blood returned. He also felt the back of Melendez's neck, which was warm and sweaty. Upon arrival at the hospital 14 minutes later, however, it was discovered that Melendez had stopped breathing during the transport, and attempts to revive him were unsuccessful. The medical examiner determined the cause of death to be positional and compression asphyxia complicating alcohol intoxication.

The Melendez family sued Howard County and the various personnel involved, alleging that the blue monster was a dangerous device and that the defendants should have known that it was dangerous and could lead to injury. On their constitutional theory, they alleged that the defendants' use of the blue monster was a policy and practice that they knew or should have known could lead to serious injury or death. Couching their claim under Estelle v. Gamble, 429 U.S. 97, 105 (1976), they contended that the defendants showed deliberate indifference to serious medical needs of Melendez. And relying on common law they alleged that the use of the blue monster and failure to monitor Melendez's condition on the way to the hospital constituted gross negligence.

On the defendants' motion for summary judgment, the district court dismissed the case. It concluded that the affidavit of the expert filed by the Melendez family to oppose summary judgment should not be considered by the court because the plaintiffs failed to establish that the affiant was an expert on pre-hospital emergency care. But even considering the affidavit, the court ruled that the affidavit was wholly conclusory, particularly as to the foreseeability of harm, and

5

that the plaintiffs therefore failed as a matter of law to show gross negligence. Similarly, on the § 1983 claims, the court observed that the plaintiffs failed to present evidence that the defendants acted with deliberate indifference to a serious medical need. On the contrary, the court observed that the defendants were attempting to provide medical attention to Jose Melendez's arm, and no evidence was presented to show that the defendants were aware that Melendez had any other medical need.

The plaintiffs appealed the judgment only so far as it dismissed Howard County, Sgt. Daniel Merson, and EMT Alphonso Conner.

II

The Melendez family contends on its § 1983 claims that the defendants were deliberately indifferent to the medical needs of Jose Melendez in violation of the standard established in Estelle v. Gamble, 429 U.S. 97, 105 (1976), an Eighth Amendment case. Without addressing the question of whether the Estelle standard is appropriate under a Fourteenth Amendment analysis and whether it extends to the conduct of paramedics attending to an arrestee, we agree with the district court that the record contains no evidence that the appellees were deliberately indifferent to a serious medical need. They were, to the contrary, seeking to provide medical attention for Melendez's arm when his death occurred. There is no evidence that they were aware of any other medical need to which they were indifferent. And there is no contention that the medical condition of Melendez's arm contributed to Melendez's death.

On the issue of gross negligence, we likewise find that the record falls short of establishing a prima facie case. The plaintiffs' expert failed to explain why harm to Melendez was or should have been foreseeable to the Howard County personnel, and absent foreseeability, their actions cannot even have been negligent. Similarly, the affidavit failed to establish that a failure to monitor Melendez during transport was the proximate cause of his death. It was a respiratory failure that caused Melendez's death, and the respiratory failure was not caused by the failure to monitor. Absent the respiratory arrest, the failure to monitor would have had no effect. At best, failure to monitor contributed to the failure to take action that might have saved

6

Melendez's life. But considering the plaintiffs' affidavit on this point we only have the statement that "[h]ad proper monitoring been done, the EMTs would have known when the patient began to experience difficulty breathing and when he suffered cardiac arrest." The record contains no opinion that the defendants would have been able to save Melendez's life. On the contrary, the only evidence in the record on this question, supplied by the defendants, is the state medical examiner's opinion that under circumstances similar to those involving Melendez, "resuscitation is not likely to be successful."

Under Maryland law, persons providing emergency medical care enjoy immunity from negligence claims; a party must establish gross negligence to recover. See Md. Code Ann., Cts. & Jud. Proc. § 5-309. Gross negligence may be found where

> there is no evidence of actual intent to injure or of actual malice toward the injured person, but in which the defendant's conduct is of such an extraordinary (or outrageous) character as possibly to be the legal equivalent of such actual intent or actual malice, sometimes described as "wanton," "reckless disregard of the rights of others," and the like.

Smith v. Gray Concrete Pipe Co., 297 A.2d 721, 730 (Md. 1972). Stated otherwise, gross negligence requires "exacting proof of a wanton or reckless disregard for human life." United States v. Pardee, 368 F.2d 368, 374 (4th Cir. 1966). In proving gross negligence, the plaintiff must show that the defendant had "actual knowledge that his conduct was a threat to the lives of others, or to have knowledge of such circumstances that could reasonably be said to have made foreseeable to him the peril to which his acts might subject others." Id.

In the case before us there is no evidence that the defendants had knowledge that their conduct would threaten the life of Jose Melendez. There is also no evidence that their conduct was extraordinary or outrageous so as to be equivalent to intent or malice or reckless disregard of the rights of others. On the contrary, the defendants were ignoring Melendez's protestations that he did not need medical attention and were attempting to provide it to him by taking him to the hospital. There is no evidence that any member of the Howard

7

County emergency crew was aware of a danger in using the blue monster or of Melendez's actual condition on the trip to the hospital.

For the foregoing reasons, we affirm the judgment of the district court.

AFFIRMED