UNITED STATES of America, Plaintiff,

v.

Neal Frederick ADAMS, Defendant.

No. 79–442–CR–EBD.

United States District Court,
S. D. Florida.

March 11, 1980.

Jeffrey H. Kay, Asst. U. S. Atty., Miami, Fla., for plaintiff.

Paul M. Rashkind, Miami, Fla., for defendant.

EDWARD B. DAVIS, District Judge.

THIS MATTER has come before this Court on the Motion of the Defendant, NEAL FREDERICK ADAMS, to Dismiss the Indictment and to review the Magistrate's Order denying his Motion to Suppress. In a one count indictment, Mr. Adams is charged as follows:

On or about the 7th day of December, 1979, in Dade County, in the Southern District of Florida, the defendant, NEAL FREDERICK ADAMS, did knowingly and unlawfully, secretly and feloniously, carry on or about his person a concealed

firearm into the United States Federal Courthouse, 300 N.E. 1st Avenue, Miami, Florida to wit: a .32 caliber H & R Arms Company revolver, Serial Number 180843, in violation of State of Florida Statute 790.01(2) and Title 18, United States Code, Section 13.

On January 28, 1980, United States Magistrate Charlene Sorrentino conducted an extensive hearing on the Defendant's Motion to Suppress and to Dismiss the underlying indictment. The Motion to Suppress turns on the question of the legality of the search. The Motion to Dismiss is predicated on the theory that the government has improperly charged the Defendant under the Assimilated Crimes Act. After considering the arguments of counsel, Magistrate Sorrentino read her recommendation to this Court into the record–that recommendation being: That although the Motion to Suppress should be denied, the Motion to Dismiss the indictment should be granted.

## I. *Facts*

On December 7, 1979, Federal Protection Officer John S. Geas was stationed at the front entrance of the Courthouse, located at the southeast corner of the building. From his duty station he observed an individual, later identified as Neal Frederick Adams, attempting to enter the lobby from an area behind the lobby. Since the Officer had not previously seen Mr. Adams pass through the metal detection device which he was operating, Officer Geas informed him that it would be necessary to comply with this procedure. As a result of the electronic search, a .32 caliber revolver was discovered in the back pocket of Mr. Adams.

Mr. Adams' presence in the Federal Courthouse that day was mandated by a Grand Jury Subpoena. It is his position that upon reaching the Courthouse by car, a "torrential downpour was in progress." Because of the inclemency he ran toward the building and was let in through a side door opened for him by a workman. Once inside the building he proceeded toward the elevator in the front lobby which would take him to the Grand Jury. At that point, he was stopped by Officer Geas. He then complied with the Officer's request and walked through the metal detection device which lead to the discovery of the weapon.

## II. *Search*

The defendant has petitioned this Court for review of the Magistrate's Order denying his Motion to Suppress. After an evidentiary hearing, Magistrate Sorrentino denied suppression stating on the record that "under the facts of the case here this morning, this was a valid consentual search." (Transcript, Proceedings on Motion to Suppress at 63). This search led to the discovery of the .32 caliber revolver which forms the basis of the present criminal prosecution.

The defendant, on the other hand, contends that the Magistrate's ruling is incorrect since it fails to account for the totality of circumstances which, when taken together, demonstrate that he did not give a voluntary consent. In support of this position, the defendant places great weight on his own assertions that he was in a "confused state of mind", "apprehensive" about the prospective Grand Jury interrogation and "startled by the GSA Officer."

Because this Court has concluded that the defendant's attack on the indictment is dispositive of this case, an evaluation of these arguments, as they relate to the validity of the search, need not be considered. However, without specifically ruling on the search and seizure issue, the circumstances of this case do demand some commentary regarding the work of the Federal Protection Officers and especially that of Officer Geas. These Officers, by preventing a dangerous weapon from being brought into the Courthouse, are to be commended for their most capable and diligent service. Indeed, a gun has no place in a Federal Courthouse unless in the care of authorized personnel. Common sense dictates at least this much. Moreover, there are signs posted at the Courthouse entrance, as well as at various other locations throughout the building warning against such behavior.

A Courthouse is the very bosom of justice. Secreting a dangerous firearm within its walls is a direct affront to the security which it offers to all those who seek it. The gun Mr. Adams was carrying was confiscated by the Officers in a proper discharge of their duties. Although this indictment must be dismissed because of a legal insufficiency, this should, in no way, be considered as an unfavorable reflection on the fine work of Federal Protection Officer Geas and his fellow Officers.

## III. *The Assimilated Crimes Act*

Specifically, the defendant is charged under the Assimilated Crimes Act, 18 U.S.C. § 13 by incorporation of section 790.01(2), Florida Statutes. Under this Florida statute it is a felony to carry a concealed firearm. It is the defendant's position, however, that he has been improperly indicted under the Assimilated Crimes Act. (Hereinafter ACA). He makes this argument because there is also a federal law proscribing the carrying of a concealed firearm in a federal building. That law is contained in 41 C.F.R. 101–20.312, which is a federal regulation, promulgated pursuant to 40 U.S.C. § 318a. Thus, he asserts that he cannot be prosecuted under the ACA, but can only be prosecuted, if at all, under section 101–20.312 without the assimilation of any state statute. The advantage of this position is that a violation of section 101–20.312 is only a misdemeanor.

The ACA provides as follows:

Whoever within or upon any of the places now existing or hereafter reserved or acquired as provided in section 7 of this title, is guilty of *any act or omission which, although not made punishable by any enactment of Congress,* would be punishable if committed within the jurisdiction of the State, Territory, Possession, or District in which such place is situated by the laws thereof in force at the time of such act or omission, shall be guilty of a like offense and subject to a like punishment.

18 U.S.C. § 13 (emphasis added)

The government contends that the ACA applies in this case because a regulation made by the General Services Administration (Hereinafter GSA)–here section 101–20.312–is not an enactment of Congress within the meaning of ACA. The government concedes, and rightly so, that where a federal enactment has prohibited a course of conduct, prosecution must arise under that statute in lieu of any assimilation of state law under the ACA.

Quite clearly, the federal regulation and the Florida statute punish the same conduct. The federal regulation provides:

No person while on (federal) property shall carry firearms, other dangerous or deadly weapons, or explosives either openly or concealed except for official purposes.

41 C.F.R. 101-20.312.

In comparison, the Florida Statute provides:

Whoever shall carry a concealed firearm on or about his person, shall be guilty of a felony of the third degree . . .

Florida Statutes § 790.01(2).

In *United States v. Butler*, 541 F.2d 730 (8th Cir. 1976) the government sought to assimilate state law in order to convict the defendant on a firearms offense. Darelle Dean Butler, an individual with a prior felony conviction, was arrested and charged with unlawful possession of a firearm on the Rosebud Sioux Reservation, South Dakota. Although both state and federal law prohibited the possession of a firearm by a felon, the government elected only to pursue prosecution on the state violation pursuant to the ACA. On appeal, the conviction was overturned. The Court held that the defendant could not be convicted for the possession of a firearm by a felon under state law pursuant to the ACA where this same type of conduct was punishable under the National Firearms Act. 18 U.S.C. § 922(h); 18 U.S.C.App. § 1202(a).

In reaching its decision, the *Butler* Court explained, "acts under the ACA do not refer to individual acts of the parties but, rather, in a 'generic sense' to acts of a general type or kind which are prohibited."

541 F.2d at 737. Here, however, there is no need to evaluate distinctions in an attempt to determine the generic nature of the offense. The act prohibited under both the Florida statute and the federal regulation is the carrying of a concealed weapon. There can be no doubt that this is the "precise act" which both laws prohibit. See *United States v. Eades*, 615 F.2d 617 (4th Cir. 1980); *United States v. Brown*, 608 F.2d 551 (5th Cir. 1979).

Even though the same act is prohibited, the government contends that the state law, by incorporation through the ACA should apply. It is their contention that the phrase "not made punishable by any enactment of Congress" within the ACA should be construed literally to mean a legislative statute passed by Congress and not a rule or regulation of the GSA. The Government relies upon *United States v. Walker*, 552 F.2d 566 (4th Cir. 1977), in support of this proposition.

While the Court in *Walker* did hold that a provision of the Uniform Code of Military Justice was not an "enactment of Congress" within the meaning of the ACA, it was careful to explain that "in creating the exception to 'made punishable by any enactment of Congress', Congress had in mind Congressional enactments of general applicability." 552 F.2d at 568 n.3.

Since the Uniform Code of Military Justice is applicable only to military personnel, and not the general public, the Court was able to hold that an article of the Code pertaining to drunken or reckless driving was not an "enactment of Congress" within the meaning of the ACA.

A distinction between limited and general applicability, however, cannot be found in the instant case. The federal regulation prohibiting firearms on federal enclaves is, of course, applicable to everyone. There is no distinction made in the regulation between federal personnel and other members of the public as there was between military

personnel and civilians in *Walker, supra.* The prohibition against firearms found in 41 C.F.R. 101–20.312 applies as equally to the defendant and all other members of the public as it does to any employee in the Courthouse except law enforcement officers.[1]

State laws are inducted by the ACA only when the Federal Government has not spoken. The fact that the federal proscription is embodied in a regulation rather than a statute does not mean that the government stands mute on the point. It has been held that a federal regulation dealing with a specific type of offense provides the law governing any prosecution despite similar state statutes. *United States v. Pardee*, 368 F.2d 368 (4th Cir. 1966). State law elevated to federal status through the ACA does not take precedent. In *United States v. Pardee, supra*, the Court held that a regulation promulgated by the Secretary of the Interior preempted any assimilation of state law in a prosecution arising out of a fatal automobile accident on a federal parkway. The Court was able to determine that the Secretary of the Interior's regulation was the federal law applicable to the prosecution despite the defendant's vigorous assertion that Maryland's traffic laws should have been inducted by the ACA.

The GSA has been duly authorized by Congress "to make all needful rules and regulations for the government of the Federal property under their charge and control." 40 U.S.C. § 318a. Section 101–20.312 was promulgated under this specific congressional authorization. This delegation by Congress authorizing GSA to promulgate regulations relating to activities on government property is not an unconstitutional delegation of legislative power. *United States v. Crowthers*, 456 F.2d 1074 (4th Cir. 1972); *United States v. Cassiagnol*, 420 F.2d 868 (4th Cir. 1970).

GSA regulations are not only constitutional, but have the full force of law.

---

1. Although law enforcement officers are exempt under the federal regulation as authorized personnel, this does not alter the general applicability status of the regulation. Law enforcement officers, by virtue of their office, are required to carry firearms. Moreover, Florida law provides a similar exemption. Fla.Stat. 790.05 (1979).

United States Code, Title 40, section 318c, provides as follows:

> Whoever shall violate any rule or regulation promulgated pursuant to section 318(a) of this title shall be fined not more than $50.00 or imprisoned not more than thirty days, or both.

Federal Courts have upheld convictions based on violations of GSA regulations under this statute. *See, e. g. United States v. Cassiagnol, supra.*

### IV. *Conclusion*

Since these regulations are enforceable as laws and have been promulgated pursuant to a specific congressional delegation, it is difficult to see how they do not qualify under the exception in the ACA as acts or omissions "made punishable by any enactment of Congress." This conclusion seems almost inescapable in light of the fact that the punishment for violations of GSA regulations is explicitly provided for by an enactment of Congress. *See* 40 U.S.C. § 318c.

In finding the Florida statute which the government seeks to assimilate under the ACA inapplicable in this case, the Court is not unmindful of attempts by prosecutors to exact the more harsh of the two penalties brought about by the overlapping regulatory schemes. *See United States v. Best,* 573 F.2d 1095 (9th Cir. 1978) (Suspension of driver's license under state law could not be incorporated into federal law under ACA because under state law suspension was not a "punishment"); *United States v. Olvera,* 488 F.2d 607 (5th Cir. 1973) (State statute prohibiting possession of amphetamine a felony while a misdemeanor under federal law); *Hockenberry v. United States,* 422 F.2d 171 (9th Cir. 1970) (State penalty for assault with a deadly weapon 10 years compared with a 5 year maximum under federal law). Despite these overzealous efforts on the part of the government, the Courts have consistently thwarted this prosecution tactic and applied the appropriate federal law. *See, e. g., Hockenberry v. United States, supra.* Even beyond this, the Courts have rejected attempts to proceed under assimilated state law where the govern-

ment could not prove all the elements of the federal offense. *United States v. Butler,* 541 F.2d 730 (8th Cir. 1976). Thus, the fact that a violation of the GSA regulation is a misdemeanor while a violation of the Florida statute is a felony is immaterial. Since the federal regulation is on point, it is the appropriate law under which any prosecution must proceed.

Therefore, it is the holding of this Court that for the purposes of the ACA, where a duly authorized federal regulation of general applicability prohibits a precise act, that act shall be considered an act or omission punishable by an "enactment of Congress" within the meaning of the statute and cannot be prosecuted under an assimilation of state law. The indictment charging the Defendant, NEAL FREDERICK ADAMS, with an offense under the Assimilated Crimes Act must be, and hereby is, dismissed.