**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Donald FOX, Defendant–Appellant.**

**No. 94–5794.**

United States Court of Appeals,
Fourth Circuit.

Argued June 7, 1995.

Decided Aug. 2, 1995.

**ARGUED:** James Patrick Doyle, MacDowell & Associates, P.C., Fairfax, VA, for appellant. Karen Elizabeth Skelton, Office of the U.S.Atty., Alexandria, VA, for appellee. **ON BRIEF:** Helen F. Fahey, U.S. Atty., Cynthia M. Monaco, Sp. Asst. U.S. Atty., Office of U.S. Atty., Alexandria, VA, for appellee.

Before WIDENER and LUTTIG, Circuit Judges, and BUTZNER, Senior Circuit Judge.

Affirmed by published opinion. Senior Judge BUTZNER wrote the opinion, in which Judge WIDENER joined. Judge LUTTIG wrote a separate concurring opinion.

## OPINION

BUTZNER, Senior Circuit Judge:

Reserving a right to appeal, Donald Fox pled guilty to driving in violation of a court order and driving while intoxicated in a federal enclave. He appeals from the district court's denial of his motion to dismiss the first count of the indictment. Because Fox was properly indicted, we affirm.

Fox was arrested on the George Washington Memorial Parkway in Virginia and charged in a six-count indictment with several violations, including count 1, driving in violation of a court order after he had been adjudged an habitual offender, and count 2, driving while intoxicated in violation of 36 C.F.R. § 4.23(a)(2). Fox moved to dismiss the first count of the indictment, claiming it was brought under the incorrect provision of federal law. The district court denied the motion. Pursuant to a plea agreement, Fox pled guilty to counts 1 and 2 of the indictment, and the government dismissed the remaining counts. Fox reserved his right to appeal the denial of his motion to dismiss count 1 and now appeals. *See* Fed.R.Crim.P. 11(a)(2). Fox does not appeal his conviction under count 2.

We will first discuss the government's reasons for charging and prosecuting count 1 under the Virginia Habitual Offender Act and the Assimilative Crimes Act. We will then discuss Fox's reasons for contending that he should have been prosecuted under 36 C.F.R. § 4.2, which provides for a much lower sentence than the district court imposed.

### I

Count 1 alleged that Fox drove a vehicle on the George Washington Memorial Parkway, within the territorial jurisdiction of the United States, after he had been adjudged an habitual offender and prohibited by order of a Virginia court from driving a vehicle in the Commonwealth of Virginia, in violation of 18 U.S.C. § 13, assimilating Va.Code Ann. § 46.2–357 (Michie 1994). Fox acknowledges that he has been adjudged to be an habitual offender and that an order of a Virginia court prohibits him from driving on Virginia highways.

The Assimilative Crimes Act, 18 U.S.C. § 13(a), fills gaps in federal criminal law. *Williams v. United States,* 327 U.S. 711, 718–19, 66 S.Ct. 778, 781–82, 90 L.Ed. 962 (1946). It provides that anyone who, within the territorial jurisdiction of the United States, engages in conduct "which, although not made punishable by any enactment of Congress, would be punishable if committed ... within the jurisdiction of the State ... in which such place is situated ... shall be guilty of a like offense and subject to a like punishment."

■ By the terms of the Act and well-established case law, the United States may invoke the Assimilative Crimes Act to prosecute an offense under state law only when there is no enactment of Congress that punishes the offender. 18 U.S.C. § 13(a); *Williams,* 327 U.S. at 724–25, 66 S.Ct. at 784–85.

■ The Virginia Habitual Offender Act determines the status of a person who has been found guilty of certain predicate criminal offenses defined by the Act. A person is adjudged an habitual offender in a civil proceeding before a court of record. *See, e.g., Davis v. Commonwealth,* 219 Va. 808, 252 S.E.2d 299 (Va.1979); *Huffman v. Commonwealth,* 210 Va. 530, 172 S.E.2d 788 (Va. 1970). If the court finds that the person is an habitual offender, it must enter an appropriate order directing the person not to operate a motor vehicle and to surrender his driver's license. §§ 46.2–355, 46.2–356. If a person drives on the highway while the court order remains in effect, as Fox did, he may be convicted of a felony for which the maximum punishment is five years. § 46.2–357(B).

"The purpose of the Habitual Offender Act is to promote highway safety...." *Davis,* 219 Va. at 812, 252 S.E.2d at 301. It denies the privilege of operating a motor vehicle to "persons who by their record have demonstrated their indifference to the safety of others and their disrespect for the laws of the state and the orders of its courts." *Whorley v. Commonwealth,* 215 Va. 740, 745,

214 S.E.2d 447, 451 (Va.1975). The conduct that the law punishes is the deliberate violation of a court order by one who has the status of an habitual offender. *Whorley,* 215 Va. at 746, 214 S.E.2d at 451; *see Edenton v. Commonwealth,* 227 Va. 413, 417, 316 S.E.2d 736, 738 (Va.1984).

In agreement with the prosecutor, the district court found no federal law applicable to Fox's offense that is charged in count 1, and it applied the Assimilative Crimes Act. It convicted Fox of violating Virginia law as assimilated by the federal Act and sentenced him to 14 months' imprisonment.

There remains the question whether the district court erred in concluding that there was no applicable federal law. To consider this issue, we turn to Fox's defense.

## II

Fox asserted in the district court, and maintains on appeal, that the government should not have charged him under the Assimilative Crimes Act. He claims that application of the Assimilative Crimes Act to his case is precluded by the existence of 36 C.F.R. § 4.2, which regulates the use of motor vehicles on federal lands. Section 4.2 reads:

> (a) Unless specifically addressed by regulations in this chapter, traffic and the use of vehicles within a park area are governed by State law. State law that is now or may later be in effect is adopted and made a part of the regulations in this part.
>
> (b) Violating a provision of State law is prohibited.

Fox argues that section 4.2 is an "enactment of Congress" that includes within its scope the Virginia Habitual Offender Act, precluding application of the Assimilative Crimes Act. He reasons that because the act of driving a motor vehicle is necessary for a violation of the Habitual Offender Act, it is a state law that governs traffic and the use of vehicles within the meaning of 36 C.F.R. § 4.2(a). He insists the United States must prosecute him under the Code of Federal Regulations and not under an assimilated state law. Among the pertinent authorities cited by Fox are the following.

Title 16 U.S.C. § 3 authorizes the Secretary of the Interior to make and publish "regulations as he may deem necessary and proper for the use and management of parks." Section 3 also provides that any violation of such regulations "shall be punished by a fine of not more than $500 or imprisonment not exceeding six months, or both." Title 36 C.F.R. § 1.3 prescribes the same penalties. Pursuant to this statutory authority, the Secretary promulgated 36 C.F.R. § 4.2, on which Fox relies. Regulations issued pursuant to this grant of authority, like all duly promulgated regulations, have the force and effect of law. *United States v. Eubanks,* 435 F.2d 1261, 1262 (4th Cir.1971); *see Chrysler Corp. v. Brown,* 441 U.S. 281, 295–96, 99 S.Ct. 1705, 1714–15, 60 L.Ed.2d 208 (1979); *Free v. Bland,* 369 U.S. 663, 668, 82 S.Ct. 1089, 1093, 8 L.Ed.2d 180 (1962).

In *United States v. Pardee,* 368 F.2d 368 (4th Cir.1966), the defendant was convicted of driving on wrong side of road on the Baltimore–Washington Parkway, a federal enclave, in violation of 36 C.F.R. § 3.32(d). Invoking the Assimilative Crimes Act, the defendant claimed the government should have charged him under Maryland law rather than the regulation. Noting that the regulation was duly promulgated pursuant to 16 U.S.C. § 3, the court held that the Assimilative Crimes Act had no application where the federal government had spoken through a regulation. 368 F.2d at 372. The court affirmed Pardee's conviction.

In *United States v. Hall,* 979 F.2d 320 (3d Cir.1992), the government prosecuted the defendant under state law through application of the Assimilative Crimes Act for driving under the influence of alcohol in a national park. The court held that the prosecution should have been brought under 36 C.F.R. § 4.23, the regulation prohibiting driving under the influence. The court stated that the regulation qualified as an enactment of Congress for purposes of the Assimilative Crimes Act because it was promulgated pursuant to specific congressional authorization and applied to the conduct of anyone on a federal enclave. 979 F.2d at 322 (collecting cases); *accord United States v. Palmer,* 956

F.2d 189, 191 (9th Cir.1992); *United States v. Brotzman,* 708 F.Supp. 713, 715 (D.Md.1989).

Fox relies on the principles expressed in these cases, and others of similar nature, to sustain his defense that the government should have prosecuted him under the federal regulations rather than the Virginia Habitual Offender Act. He asserts that "the Habitual Offender Act is nothing more than a glorified driving on a suspended license statute." (Brief at 9). Pursuing this line of argument, he cites cases that hold that driving in a national park while a license is suspended must be prosecuted under the federal regulations and not under state law through application of the Assimilative Crimes Act. *See, e.g., United States v. Rogers,* 865 F.Supp. 718, 720 (D.Colo.1994); *Brotzman,* 708 F.Supp. at 715; *cf. United States v. Knott,* 722 F.Supp. 1365, 1368 (E.D.Va.1989).

### III

■ We are not persuaded by Fox's argument. The cases on which he relies are not controlling, although they are correct in holding that the Secretary's traffic regulations for national parks, including 36 C.F.R. § 4.2, qualify as an enactment of Congress for the purpose of the Assimilative Crimes Act. The difficulty with Fox's argument is his misunderstanding of the Habitual Offender Act.

The Supreme Court of Virginia has explained that the gravamen of a violation of the Habitual Offender Act is the act of operating a motor vehicle by a driver who has been formally adjudged to be a danger to others using the highway. *Edenton,* 227 Va. at 417, 316 S.E.2d at 738. The crime which Fox committed was his defiance of the law in operating a motor vehicle while a court order prohibiting this conduct was in effect. *Whorley,* 215 Va. at 745, 214 S.E.2d at 451.

■ Contrary to Fox's argument, violating the Habitual Offender Act is not similar to driving with a suspended license. The Virginia Supreme Court has held that driving without a valid license is not a lesser included offense of the crime of violating a court order that prohibits an habitual offender from driving on the highway. As that court explained,

although both crimes involve operating a motor vehicle, "the *character* of the acts … is different." *Edenton,* 227 Va. at 417, 316 S.E.2d at 738.

The district court correctly held that Fox's status as an habitual offender and his violation of a court order prohibiting him from driving a motor vehicle on the highway did not bring his offense within the scope of § 4.2. The district court's conclusion is consistent with the federal regulations. In the context of § 4.2, the term "state law" is defined as "applicable and nonconflicting statutes." § 1.4(a). Examination of the specific offenses proscribed in §§ 4.3 to 4.30 discloses that they pertain to traffic and the rules of the road. It is apparent that § 4.2 is a catch-all provision pertaining to the same subject. State law punishing one who drives in violation of a court order after being adjudged an habitual offender is not the type of state law which is defined in § 1.4 and adopted as a traffic regulation in § 4.2.

■ Because no federal law or regulation pertained to Fox's defiance of the court order, he was properly prosecuted under state law assimilated by the Assimilative Crimes Act. The district court's judgment is affirmed.

*AFFIRMED.*

LUTTIG, Circuit Judge, concurring in the judgment:

I would simply affirm the district court on the ground that a regulation promulgated by an Executive agency is not an "enactment of Congress" for purposes of the Assimilative Crimes Act, 18 U.S.C. § 13(a) ("ACA"). The majority's assumption otherwise, in my view, is untenable. Were I to agree that a regulation is a statute, I would dissent from the majority's opinion because I believe that, through the Department of the Interior regulation at issue in this case, 36 C.F.R. § 4.2, the United States has adopted Virginia's Habitual Offender Act for application to appellant's offense on the George Washington Parkway.

Accordingly, I concur only in the judgment reached by the majority.

## I.

The majority does not actually hold that a regulation is an enactment of Congress; it decides the case on the ground that the Habitual Offender Act is not adopted into federal law by 36 C.F.R. § 4.2. However, the majority assumes in *dicta* that several cases cited by appellant "are correct in holding that the Secretary's traffic regulations for national parks, including 36 C.F.R. § 4.2, qualify as an enactment of Congress for the purpose of the Assimilative Crimes Act." *Ante* at 185. Because it offers no explanation for this assumption, other than the immaterial one that validly promulgated regulations "have the force and effect of law," *ante* at 184 (citing *United States v. Eubanks,* 435 F.2d 1261, 1262 (4th Cir.1971)), I surmise that the majority finds convincing either, or both, of the rationales advanced by the other courts that have concluded that regulations can constitute enactments of Congress. I am persuaded by neither rationale.

First, some courts have held or assumed that a regulation promulgated by an Executive agency qualifies as an "enactment of Congress" for purposes of the ACA either because the Act requires only that the federal government have spoken on the subject in question, *see, e.g., United States v. Adams,* 502 F.Supp. 21, 24 (S.D.Fl.1980) ("The fact that the federal proscription is embodied in a regulation rather than a statute does not mean that the government stands mute on the point."), or because the Act requires only that federal law exist on the subject, *see, eng., United States v. Palmer,* 956 F.2d 189, 191 (9th Cir.1992) (assuming that regulation constitutes enactment of Congress because regulation is "federal law"). These cases quite obviously ignore the unambiguous language of the ACA requiring that an "enactment of Congress" make punishable the act in question if prosecution under the ACA is to be disallowed. 18 U.S.C. § 13(a). An agency regulation is not an "enactment," and it certainly is not an "enactment of Congress," notwithstanding that the federal government speaks through regulations and regulations constitute binding law.

The second rationale, best evident in *Adams,* 502 F.Supp. at 24–25, and *United States v. Baker,* 603 F.2d 104, 105 (9th Cir. 1979), is that agency regulations can be considered enactments of Congress because the power of agencies to issue regulations derives from enactments of Congress. Again, however, this rationale cannot be squared with the terms of the ACA; the broad enabling statutes from which agencies derive their regulatory power typically do not "make punishable" any acts whatsoever. In the present case, for example, the Secretary of the Interior has issued 36 C.F.R. § 4.2 pursuant to 16 U.S.C. § 3, which simply directs the Secretary to "make and publish such rules and regulations as he may deem necessary or proper for the use and management of the parks, monuments, and reservations under the jurisdiction of the National Park Service." Congress' enactment thus neither proscribes particular conduct nor prescribes a particular punishment, and therefore can scarcely be said to "make punishable" any conduct.

*United States v. Pardee,* 368 F.2d 368 (4th Cir.1966), does not validate the majority's assumption, although it appears that the court in that case likewise assumed that regulations are statutes for purposes of the ACA. This is presumably why not even the government cites us to this case.

In *Pardee,* the court rejected the defendant's argument that state law should govern disposition of his charge for driving on the wrong side of the road, on the ground that 36 C.F.R. § 3.29 itself required the application of state law only if the federal regulations did not govern the conduct in question, and that a federal regulation, 36 C.F.R. § 3.32, in fact covered the conduct: "[T]he applicability of the State traffic laws is excepted by the very regulation, § 3.29, on which the appellant relies," since "[t]hat section excludes the State law where it has been 'otherwise provided for by ... *the regulations contained in this part.*'" 368 F.2d at 372 (emphasis added). The court did note that the ACA does not apply where, as in that case, "the Federal Government has spoken." *Id.* But there is little question that the court decided that federal law governed the driving on the wrong side of the road count on the ground that section 3.29 itself provided for applica-

tion of the federal regulation in section 3.32 rather than state law, and merely assumed that regulations can be regarded as congressional enactments. As the court stated: "§ 3.29[ ] deals specifically with traffic control laws and regulations, thus predominating over § 3.3 [the regulation providing for application of state law through the ACA] in this special matter." *Id.* Indeed, when the court went on to address the manslaughter count, as to which it specifically held that the ACA was inapplicable because of the existence of a controlling federal statute, the court evidenced its understanding that state law applies only where a congressional enactment does not exist. *Id.* at 373 ("Obviously, then, the offense here is beyond the scope of the Assimilative Crimes Act since the latter by its terms embraces only 'any act or omission which, although not made punishable by any enactment of Congress ...', and thereby excludes conduct made punishable by Congress.").

Just as Congress may provide that a rose by another name is not a rose, it may define regulations as statutes. Until it so defines them, however, I would hold that an agency regulation is only that—a regulation of an agency—and not an enactment of Congress. I would not indulge the argument made by the government in its brief and accepted by the majority.

## II.

If I agreed that a regulation promulgated by an Executive agency is an "enactment of Congress," I would yet disagree with the majority's ultimate conclusion that Virginia's Habitual Offender Act is not adopted by 36 C.F.R. § 4.2. The language of section 4.2 is broad: "traffic and the use of vehicles within a park area are governed by State law. State law that is now or may later be in effect is adopted and made a part of the regulations in this part." 36 C.F.R. § 4.2(a). The United States concedes as much: "[t]he purpose of Section 4.2 is to incorporate all state traffic regulations without regard to whether those offenses were characterized as criminal, civil or administrative in nature." Appellee's Br. at 9.

The conclusion, I believe, is inescapable that Virginia's Habitual Offender Act, Va. Code § 46.2–357(B)(2), is a law governing "traffic and the use of vehicles," or, in the words of the United States, is a "state traffic regulation." The majority holds otherwise, reasoning that the Habitual Offender Act is of a different character than a traffic regulation because "the gravamen of a violation of the Habitual Offender Act is the act of operating a motor vehicle by a driver who has been formally adjudged to be a danger to others using the highway." *Ante* at 185 (citing *Edenton v. Commonwealth,* 227 Va. 413, 316 S.E.2d 736, 738 (1984)).* Thus, according to the majority, the purpose of the Habitual Offender Act is to enforce judicial decrees. But even if the sole purpose of that Act was to enforce judicial decrees, which it is not, *see ante* at 183 (citing *Davis v. Commonwealth,* 219 Va. 808, 252 S.E.2d 299, 301 (1979), for the proposition that "[t]he purpose of the Habitual Offender Act is to promote highway safety"), the Act is no less a statute governing the use of a vehicle.

Title 46.2 of the Virginia Code, in which the Habitual Offender Act appears, is designated "Motor Vehicles." Va.Code Ann. § 46.2, at p. 212 (Michie 1994). The Habitual Offender Act is included in Subtitle II, "Titling, Registration, and Licensure," under the subheading "Licensure of Drivers." *Id.* And the Act indisputably defines certain circumstances under which, in the interest of safety, an inhabitant of Virginia is not authorized to operate a motor vehicle. *See* Va. Code § 46.2–357 ("It shall be unlawful for any person to drive any motor vehicle ... on the highways of the Commonwealth while the order of the court prohibiting such operation remains in effect."). *See also ante* at 183 (Habitual Offender Act "denies the privilege of operating a motor vehicle to 'persons who by their record have demonstrated their indifference to the safety of others and their disrespect for the laws of the state and the

---

* The majority correctly rejects appellant's argument that "the Habitual Offender Act is nothing more than a glorified driving on a suspended license statute," *ante* at 185, but the rejection of this argument is nonresponsive on the issue of whether the Habitual Offender Act is nevertheless a statute governing "traffic and the use of vehicles."

orders of its courts.'") (citing *Whorley v. Commonwealth,* 215 Va. 740, 214 S.E.2d 447, 451 (1975)). As such, the Act unmistakably governs the use of vehicles, and, for that reason, is clearly within the scope of 36 C.F.R. § 4.2. Prosecution would therefore be barred under the Assimilative Crimes Act but for the fact that section 4.2 is not an enactment of Congress.

### III.

Because I do not consider a regulation promulgated by the Secretary of the Interior to be an "enactment of Congress," I would hold that the United States was not precluded from proceeding against appellant under the Virginia Habitual Offenders Act, as assimilated by the Assimilative Crimes Act, and I would affirm the convictions below on that ground.