**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                      No. 96-4743

LEWIS CHARLES TERRY, JR.,
Defendant-Appellant.

Appeal from the United States District Court
for the Western District of Virginia, at Roanoke.
James C. Turk, District Judge.
(CR-94-107-R)

Argued: October 31, 1997

Decided: December 10, 1997

Before WILKINSON, Chief Judge, MICHAEL, Circuit Judge,
and BUTZNER, Senior Circuit Judge.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** John Stuart Bruce, Acting Federal Public Defender,
Greensboro, North Carolina, for Appellant. Lisa J. Stark, UNITED
STATES DEPARTMENT OF JUSTICE, Washington, D.C., for
Appellee. **ON BRIEF:** Isabelle Katz Pinzler, Acting Assistant Attor-
ney General, Dennis J. Dimsey, UNITED STATES DEPARTMENT
OF JUSTICE, Washington, D.C., for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Lewis Terry appeals his conviction and sentence on numerous grounds. In a previous appeal at the instance of the government, this court held that 18 U.S.C. § 924(c) authorizes consecutive punishment and remanded for resentencing. United States v. Terry, 86 F.3d 353 (1996). In this appeal Terry claims that the Assimilative Crimes Act (ACA) was improperly applied in this case, that a crime committed in violation of the ACA is not a federal crime for 18 U.S.C. § 924(c)(1) purposes, and that his indictment was defective. We affirm the judgment of the district court.

I

On April 16, 1994, Lewis Terry and Carlos Bishop were turkey shooting in Jefferson National Forest. Terry was driving Bishop's car in the forest when the victim's truck pulled up behind them. Terry pulled to the side of the road to let the victim pass. As the truck went by, Terry stated, "Let's kill the son of a bitching nigger." Bishop responded by pulling out his gun and firing on the truck. A chase ensued. It ended when the victim drove into a populated campsite in an unsuccessful attempt to elude Terry and Bishop. Terry repeatedly drove the car past the campsite while Bishop shot at the victim. No one was injured but the victim's car suffered damage.

On March 15, 1995, a jury found Terry guilty of violating Va. Code § 18.2-154 (Michie 1996), assimilated by the ACA, 18 U.S.C. § 13, and of using and carrying a firearm during a federal crime of violence in violation of 18 U.S.C. § 924(c)(1). The Virginia statute proscribes maliciously shooting into a vehicle and putting the life of an occupant in peril.

2

II

Terry first claims that the district court lacked jurisdiction to apply the ACA. He believes that the federal assault statute, 18 U.S.C. § 113, pre-empted the ACA in this case. He states that his conduct violated both the federal assault statute and the Virginia statute, and based on this fact the district court was required to use the former in his trial. Terry asserts that by enacting the federal assault statute Congress has already dealt with the type of crime Terry committed.

We note that jurisdictional issues may be raised at anytime during a criminal proceeding and that a district court's jurisdiction over a criminal offense is a question of law that is reviewed de novo. Fed. R. Crim. P. 12(b)(2); United States v. Walczak , 783 F.2d 852, 854 (9th Cir. 1986). A state statute may not be incorporated through the ACA if Congress has passed a federal law that punishes the same crime. United States v. Fox, 60 F.3d 181, 183 (4th Cir. 1995). This court has held that the use of the ACA is proper even when the conduct violates both state and federal law, so long as the precise act prohibited by the state statute is not specifically prohibited by federal law. United States v. Minger, 976 F.2d 185, 189 (4th Cir. 1992). The purpose of this is to afford those citizens on federal land the same protection as those not on federal land and to allow laws with different purposes to have their full and intended effects. Minger, 976 F.2d at 187; see also Fox, 60 F.3d at 185 (use of the ACA is appropriate since federal law and state law serve different purposes).

The federal assault statute and the Virginia statute have different purposes and each requires different elements. The Virginia statute requires that the attack be directed at a vehicle and that the attack put the occupant in peril. The federal statute is not this precise. Additionally, the purposes behind the statutes are vastly different. The Virginia statute is designed to protect occupied vehicles from attacks. The federal statute does not address the problems that the Virginia statute remedies. Terry's conduct was precisely the type of conduct which the Virginia statute was designed to prevent and punish. For these reasons, the Virginia statute's assimilation in this case was proper. See, e.g., Fox, 60 F.3d at 184-85.

3

## III

Terry's next claim is that an assimilated crime is not a federal crime of violence for the purpose of prosecution and sentencing under 18 U.S.C. § 924(c).

We hold an assimilated crime is a federal crime for § 924(c) purposes and is a crime that can be prosecuted in a court of the United States. A defendant charged with violating a statute adopted through the ACA is charged with a federal crime. A crime committed in violation of the ACA is a crime which can be prosecuted in a court of the United States. See United States v. Kiliz, 694 F.2d 628 (9th Cir. 1982). While the ACA incorporates state law, it does not make the criminal violation any less federal. "When a state law is assimilated under the ACA, the ACA transforms the state law into a federal law for purposes of prosecution, and any violation of the state law becomes a crime against the United States." Minger, 976 F.2d at 187. Congress has not shown an intent to treat assimilated crimes differently from other federal crimes in this respect, and we see no reason to do so now.

## IV

Terry also argues that his conviction under § 924(c)(1) is invalid because the indictment failed to charge that the underlying violent crime was a federal crime of violence. In essence, Terry claims that the indictment is defective because it did not quote the statute and specify that the offense was one which "may be prosecuted in a court of the United States." 18 U.S.C. § 924(c)(1).

The determination of an indictment's validity is based on practical not technical concerns. United States v. Matzkin , 14 F.3d 1014, 1019 (4th Cir. 1994). In a postverdict challenge to an indictment, "it is enough that the necessary facts appear in any form, or by a fair construction can be found within the [indictment's] terms." Hagner v. United States, 285 U.S. 427, 433 (1932). An indictment is not deficient simply because it fails to recite the precise language of the statute. United States v. Bolton, 68 F.3d 396, 400 (10th Cir. 1995).

4

We hold that the indictment was sufficient to meet these standards, even though it did not quote § 924(c)'s language. While count two of the indictment did not state the crime was one which"may be prosecuted in a court of the United States," § 924(c)(1), it did specify that the underlying crime occurred on federal land and that the United States had concurrent jurisdiction over that land. These facts supplied Terry with enough information to recognize that the underlying crime was one which could be prosecuted in a court of the United States.

V

Terry also claims count one of the indictment was defective. We find his argument without merit. Terry asserts for the first time that the count two jury instructions were in error and that this error requires reversal. We find no such error. We have reviewed the remainder of his claims and find them without merit.

AFFIRMED

5