**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                                No. 97-4233

DARRELL TODD,
Defendant-Appellant.

Appeal from the United States District Court
for the District of Maryland, at Greenbelt.
Deborah K. Chasanow, District Judge.
(CR-95-378-DKC)

Argued: October 30, 1997

Decided: March 16, 1998

Before WILKINSON, Chief Judge, MOTZ, Circuit Judge, and
CAMPBELL, Senior Circuit Judge of the
United States Court of Appeals for the First Circuit,
sitting by designation.

_____

Vacated and remanded for revision of the sentence in accordance
herewith; otherwise affirmed by unpublished opinion. Senior Judge
Campbell wrote the opinion, in which Chief Judge Wilkinson and
Judge Motz joined.

_____

**COUNSEL**

**ARGUED:** Lauren Elizabeth Case, Assistant Federal Public
Defender, Greenbelt, Maryland, for Appellant. Jane Frances Nathan,

Assistant United States Attorney, Hyattsville, Maryland, for Appellee.
**ON BRIEF:** James K. Bredar, Federal Public Defender, Greenbelt, Maryland, for Appellant. Lynne A. Battaglia, United States Attorney, Hyattsville, Maryland, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

CAMPBELL, Senior Circuit Judge:

A federal officer stopped Darrell J. Todd on a federal government property located in Gaithersburg, Maryland, suspecting him of unauthorized driving through the grounds. Conversation with Todd, and the sight of two empty knife sheaths within the car, led to a search of Todd's vehicle, yielding a handgun. Todd ultimately pleaded guilty to transporting a handgun in violation of a Maryland statute assimilated, as all parties then believed, by the Assimilative Crimes Act, 18 U.S.C. § 13 (1997) (the "ACA"). Todd reserved the right to challenge the constitutionality of the search. Following a suppression hearing, the magistrate judge rejected Todd's Fourth Amendment challenge, and the district court affirmed.

On appeal, Todd renews his Fourth Amendment argument and adds a new contention: that instead of being charged under the ACA for violating a Maryland statute, he should have been charged with violating a federal regulation that prohibits transporting firearms on federal property. We affirm as to both issues, finding the latter to be barred by Todd's failure to raise it below.

I. BACKGROUND

On the afternoon of November 29, 1994, Corporal Gary Young, a uniformed federal officer, was patrolling the grounds of a National Institute of Standards and Technology ("NIST") installation located

2

on federal property in Gaithersburg, Maryland. Young observed Defendant-Appellant Darrell J. Todd driving his truck on the NIST grounds, and saw that the truck lacked the parking sticker required for NIST employees. Driving through the NIST grounds without authorization violates a federal regulation, 15 C.F.R.§ 265.21, notice of which is posted at all the installation's gates. Based on his belief that Todd was committing a traffic offense, Officer Young stopped Todd.

The officer asked for and received Todd's license and registration, then visually inspected the truck's exterior. After radioing in the license and registration information, Officer Young asked Todd whether he worked at NIST. Todd indicated that he did not. Young asked what Todd was doing there, and Todd replied,"[j]ust cutting through."

While questioning Todd, Officer Young noticed two empty knife sheaths inside Todd's truck. Although the sheaths were designed to contain a type of knife that Young knew to be legal, he asked Todd whether he had any weapons in his truck. Todd said he did not. Young asked if Todd wanted to "show [him]" that there were no weapons in the truck, and Todd refused to consent to a search. Young then asked whether the truck contained any "prohibited" weapons. Todd replied by asking what weapons would be prohibited. After Young explained what weapons were prohibited, Todd conceded that the truck contained a gun. Young ordered Todd from his vehicle and seized the gun.

Todd was ultimately prosecuted for transporting a handgun under the Assimilative Crimes Act, 18 U.S.C. § 13 (the "ACA"). The ACA is a gap-filling criminal statute: in geographic areas which, like the NIST installation in Gaithersburg, Maryland, are under exclusive federal jurisdiction, the ACA assimilates the criminal law of the state, except where the conduct is independently punishable by any "enactment of Congress." 18 U.S.C. § 13. The state law under which Todd was charged here, Md. Ann. Code art. 27, § 36B(b) (1997), prohibits, inter alia, the "knowing[ ] transport [of] any handgun, whether concealed or open, in any vehicle traveling upon the public roads."

In proceedings before a federal magistrate judge, Todd moved to suppress the handgun as seized in violation of the Fourth Amend-

3

ment. The magistrate judge denied the motion on the ground that Todd had consented to the search of his truck. Todd then entered a conditional plea of guilty, reserving his right to appeal from the denial of his suppression motion.

The district court affirmed the magistrate's decision, although on a different basis. It rejected the conclusion that the encounter was consensual, and found that Officer Young lacked reasonable suspicion to believe that Todd was engaged in criminal activity. However, ruling that Officer Young could reasonably have feared for his safety, the district court affirmed the magistrate's denial of Todd's suppression motion. This appeal followed.

II. DISCUSSION

A. Todd's Fourth Amendment Challenge

Todd contends that Officer Young exceeded the constitutional limits delineated by Terry v. Ohio, 392 U.S. 1 (1968), and its progeny, when he detained Todd for questioning about weapons. In particular, Todd challenges Officer Young's power to have continued questioning him after inspecting his license and registration and making inquiries relevant to traffic matters. Instead of allowing Todd to continue on his way, Officer Young interrogated him further about whether he had weapons, whether he would allow a search for weapons, and whether he had any "prohibited" weapons. These questions resulted in Todd's admission that he was carrying a gun in his truck, leading to a vehicular search that revealed the gun. Todd does not challenge the officer's right to have searched the truck once he was told of the gun. His objection is rather to the questioning about weapons that elicited the information about the gun. Todd argues that he should have been allowed to proceed as soon as Officer Young had concluded the purely traffic-related aspects of his investigation.

During a routine traffic stop, an officer may not hold a driver for further questioning unless other grounds to do so are present, such as consent or reasonable suspicion of a criminal activity. See United States v. Rusher, 966 F.2d 868, 876-77 (4th Cir. 1992). Another permissible ground for conducting further investigation during a traffic stop is the officer's reasonable fear based "on information sufficient

4

to cause a reasonably prudent person to believe that either [the officer's] safety or that of others is in danger." <u>United States v. Baker</u>, 78 F.3d 135, 137 (4th Cir. 1996). In the latter circumstances the officer may conduct a protective search, the proper extent of which is to be determined, on a case by case basis, by balancing the officer's interest in protection against the resulting intrusion. <u>Id.</u> at 1138.

Here, the district court ruled out both consent and a reasonable suspicion of criminal activity as justifications for further detaining Todd. However, the district court correctly held that the officer's observation of two open knife sheaths in Todd's vehicle gave rise to reasonable safety concerns that justified additional questions about weapons resulting in Todd's disclosure that he was carrying a gun in his truck.

We need not decide whether seeing the two empty sheaths in Todd's vehicle was sufficient indicia of dangerousness to have permitted a full-blown search of the vehicle. Officer Young did not embark upon an actual search then. He did, however, extend the traffic stop briefly by questioning Todd about the possible existence of weapons in the truck. Todd replied first with equivocation, then by admitting that he was carrying a handgun. Once Todd said he possessed a firearm, Officer Young had probable cause to order Todd from the truck and conduct an actual search.

In determining the legality of an officer's conduct during a <u>Terry</u> stop, a court must balance the degree of the intrusion against the evidence known to the officer at the time. Here we agree with the district court that the sight of the two empty sheaths raised sufficient safety concerns so as to justify briefly extending the detention for the purpose of asking Todd about possible weapons. Todd's responses justified both the officer's continued questioning and the vehicular search that finally took place. Like the district court, we find no violation of the Fourth Amendment in what was done.

B. <u>Improper Charging Under the</u>
<u>Assimilative Crimes Act</u>

For the first time on appeal, Todd argues that he should not have been prosecuted under the ACA for violating the Maryland law prohibiting the transport of a handgun. The ACA assimilates a state's

5

criminal law only when the acts or omissions in question are "not made punishable by any enactment of Congress." 18 U.S.C. § 13(a). <u>Williams v. United States</u>, 327 U.S. 711, 717 (1946) (no assimilation if the same acts were made criminal by the laws of Congress). Todd asserts that the proper charge was a violation of 15 C.F.R. § 265.39, a federal regulation providing that no unauthorized person "shall carry, transport, or otherwise possess on [an NIST] site, firearms."

The government now represents that it agrees with Todd that it was error to have prosecuted him under the ACA. However, as Todd entered a voluntary plea of guilty to the erroneous charge and did not object below, the government contends that he is barred from raising the purported error on appeal. Todd responds that this alleged defect is reviewable as either plain error, <u>see</u> Fed. R. Crim. P. 52(b), or as one of jurisdiction, <u>see</u> Fed. R. Crim. P. 12(b)(2).

We hold that it is too late for Todd to advance this newly-minted contention. In so holding, we also make clear that we do not rule on whether or not Todd was erroneously charged below, a question turning on as-yet unsettled law in this Circuit.

1. The Purported Error Was Not Jurisdictional

Assuming for purposes of argument, but see below, that Todd was incorrectly charged under the ACA, Todd is nonetheless wrong that an incorrect reference to the ACA and the Maryland statute would have rendered the charging document unable "to show jurisdiction in the court." Fed. R. Crim. P. 12(b)(2). The magistrate judge had subject-matter jurisdiction over purported violations of federal law within the judicial district. <u>See</u> 18 U.S.C.§§ 3401(a), 3231. To charge an offense incorrectly under the ACA rather than under another provision of federal law would not alter the jurisdiction of the district court: both charges would be federal violations within the district court's subject matter jurisdiction. The existence of an independent federal proscription goes to the merits of the cause, not its jurisdictional cognizability in the federal courts. <u>Accord Hockenberry v. United States</u>, 422 F.2d 171, 174 (9th Cir. 1970). Therefore, Rule 12(b)(2)'s jurisdictional exception would not excuse Todd's failure to challenge the ACA charge below.

6

2. Plain Error

Rule 52(b) of the Federal Rules of Criminal Procedure provides that "[p]lain errors or defects affecting substantial rights may be noticed though they were not brought to the attention of the Court." An error is "plain" only if "clear under current law." United States v. Olano, 507 U.S. 725, 734 (1993). Because the prosecution of Todd under the ACA was not clearly error under current law, the alleged error is not reviewable under Rule 52(b).

To be sure, this court has assumed in two of its opinions that the ACA's phrase "enactment of Congress" may include federal regulations. See United States v. Fox, 60 F.3d 181, 185 (4th Cir. 1995) ("[T]he Secretary's traffic regulations . . . qualify as an enactment of Congress for the purpose of the [ACA]"); United States v. Pardee, 368 F.2d 368, 372 (4th Cir. 1966) (assuming that ACA assimilated Department of Interior traffic regulations). Accordingly, both Todd and the government thought that the federal regulation that prohibited the precise conduct with which Todd was charged precluded assimilation of the state-law offense under the ACA.

However, this court's statements in Fox and Pardee were not holdings in the sense of being essential to the results in those cases. In both cases, the court ruled that the federal regulation in question did not prohibit the precise conduct criminalized by the assimilated state law, affirming the ACA conviction on that ground. See Fox, 60 F.3d at 185; Pardee, 368 F.2d at 372. Thus, we cannot say that it was plainly error for the government to proceed under the ACA. What was done may not have been error and even if it was error, the error would not have been "plain."

Further disposing of the notion of plain error is the absence of anything that can be said to have "`seriously affect[ed] the fairness, integrity, or public reputation of judicial proceedings.'" Olano, 507 U.S. at 736 (quoting United States v. Atkinson, 297 U.S. 157, 160 (1936)). Even assuming the worst, for the sake of argument, that Todd was incorrectly charged under a Maryland firearms statute carrying a punishment more severe than allowed under the federal firearms regulation, he was at all times subject to the former when driving anywhere

7

in Maryland outside federal enclaves, rendering the disparity hardly so grievous as to fall within the <u>Olano</u> standard.*

Accordingly, we reject Todd's challenge based on the alleged mis-

application of the ACA. We emphasize that our decision on this point should in no way be construed as adding to or subtracting from the law in this circuit regarding the correct construction of "enactment of

Congress" for purposes of the ACA. Whatever the correct interpretation of that phrase, an unargued issue that must await decision on some later occasion, Todd is not entitled to raise the point on appeal

under the "plain error" standard.

Subject, therefore, to correction of the sentence to comport with the government's stipulation, we affirm the judgment of the district court,

rejecting Todd's Fourth Amendment claim and also rejecting his contention, raised for the first time upon appeal, that we should reverse his ACA conviction notwithstanding his guilty plea to the ACA charge and his failure to contest it below.

In order to effectuate the government's stipulation, we remand with directions that Todd's sentence be revised so as to provide for a fine of only $50 and a special assessment of only $5.

<u>VACATED AND REMANDED FOR REVISION OF THE SENTENCE IN ACCORDANCE HEREWITH; OTHERWISE AFFIRMED</u>

_____

*We note further that to avoid any possible appearance of unfairness, the government agreed in open court at the time of argument to reductions in Todd's fine and special assessment to no more than what would have been allowed in a proceeding brought under the federal regulation.

We emphasize that this stipulation to a reduction was not legally compelled, but rather was a matter of the government's grace consistent with its understanding that Todd should not have been prosecuted under the ACA but rather under the federal regulation.