**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                         No. 98-4375

TARUS D. OWENS,
Defendant-Appellant.

Appeal from the United States District Court
for the Eastern District of Virginia, at Norfolk.
Rebecca B. Smith, District Judge.
(CR-97-150)

Submitted: January 29, 1999

Decided: February 24, 1999

Before ERVIN and WILKINS, Circuit Judges, and BUTZNER,
Senior Circuit Judge.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

Otis Kennedy Forbes, III, FINE, FINE, LEGUM & FINE, Virginia
Beach, Virginia, for Appellant. Helen F. Fahey, United States Attor-
ney, Harvey L. Bryant, III, Assistant United States Attorney, Norfolk,
Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

## OPINION

PER CURIAM:

Tarus D. Owens was convicted of assault with intent to commit murder, robbery, use of a firearm during and in relation to a crime of violence, possession of ammunition by a fugitive, and attempted murder. He received life imprisonment and a consecutive sentence of three hundred months' imprisonment. On appeal, Owens alleges that the district court erred in denying: (1) his motion to strike count eight of the indictment because the underlying offense, based on the Assimilative Crimes Act, had already been charged in other counts or could have been charged as a violation of 18 U.S.C. § 1113 (1994); (2) his motion in limine and motion to suppress testimony and evidence relating to a pre-trial identification; (3) his motion for new counsel and appointed counsel's motion to withdraw as counsel. We affirm Owens's convictions and sentence.

The evidence at trial disclosed that at approximately 1:30 a.m. on August 23, 1997, a black male held at gun point and demanded money from Yeoman First Class Todd Wilson, who was walking back to his ship on a naval base. The assailant pointed the gun approximately four inches from Wilson's face for approximately nine seconds. When Wilson reached for his wallet, the assailant fired the gun. The bullet entered Wilson's right eye. Wilson, lying unconscious, was discovered five hours later. His wallet was not found at the scene. Although Wilson survived the assault, he lost his right eye, suffered brain damage which limits his vision in the left eye, and is paralyzed in his left arm and leg.

The evidence at trial disclosed that in late July or early August 1997, Tarus Owens began living with a friend, Curtis McDonald, on the naval base. Owens arrived carrying a pistol, and did not have a job or money up until the time of the shooting. During the course of an unrelated investigation, McDonald informed investigators that

2

Owens told him that he robbed and shot someone near the club in the early morning hours of August 23rd. McDonald further stated that he saw Owens with a gun a few hours before the shooting and with money after the shooting.

Officers presented a photographic line-up to Wilson in a hospital room. The police used six different photographs of males of the same race with similar skin tone, facial hair and hair styles, and approximately the same age as Owens. There was no suggestion by the agent conducting the photographic line-up that a suspect was among those photographed. Without hesitation, Wilson identified Owens from the photographs as the assailant.

After a three day trial, a jury convicted Owens of assault with intent to commit murder, robbery, two counts of the use of a firearm in a crime of violence, possession of ammunition by a fugitive, and attempted capital murder, assimilating §§ 18.2-31.4, -25 of the Code of Virginia. The court sentenced Owens to life imprisonment and a three hundred months' consecutive sentence.

On appeal, Owens first alleges that the district court erred in denying his motion to strike count eight of the indictment which charged attempted capital murder under Va. Code Ann. § 18.2-31.4, -25 (Michie 1996 Replacement Volume). Owens argues that the Government should have been precluded from charging him with attempted capital murder under the Assimilative Crimes Act because counts one and three, alleging federal violations, together cover the specific conduct he allegedly committed in shooting and robbing Wilson. Count one charged Owens with assault with intent to commit murder in violation of 18 U.S.C. § 113(a) (1994) and count three charged him with robbery in violation of 18 U.S.C. § 2111 (1994). Owens further posits that Congress through federal law already proscribes by statute the criminal activity alleged here and, therefore, resort to Virginia law was improper. Specifically, Owens maintains that the Government, in the alternative, could have charged him with attempted murder in violation of 18 U.S.C. § 1113 (1994), obviating the need to rely upon state law to punish the criminal activity alleged here.

We note that jurisdictional issues may be raised at anytime during a criminal proceeding and that a district court's jurisdiction over a

3

criminal offense is a question of law that is reviewed <u>de novo</u>. <u>See</u> Fed. R. Crim. P. 12(b)(2); <u>United States v. Walczak</u>, 783 F.2d 852, 854 (9th Cir. 1986). A state statute may not be incorporated through the ACA if Congress has passed a federal law that punishes the same crime. <u>See United States v. Fox</u>, 60 F.3d 181, 183 (4th Cir. 1995). However, the use of the ACA is proper even when the conduct violates both state and federal law, so long as the precise act prohibited by the state statute is not specifically prohibited by federal law. <u>See</u> <u>United States v. Minger</u>, 976 F.2d 185, 189 (4th Cir. 1992). The purpose of this is to afford those citizens on federal land the same protection as those not on federal land and to allow laws with different purposes to have their full and intended effects. <u>See id.</u> at 187; <u>Fox</u>, 60 F.3d at 185 (use of ACA appropriate since federal law and state law serve different purposes).

Section 18.2-31.4 of the Code of Virginia punishes"the willful, deliberate, and premeditated killing of any person in the commission of robbery or attempted robbery." Section 18.2-25 of the Code of Virginia provides that an attempt to commit such an offense is punishable as a Class 2 felony. There is no question that the underlying criminal activity committed here is prohibited by both federal and state laws. The more pertinent question, for purposes of the applicability of the ACA, is rather whether the precise act prohibited by the state statute, here the attempted killing of any person in the commission of robbery or attempted robbery, is specifically prohibited by federal law. Because conviction for assault with intent to commit murder under 18 U.S.C. § 113(a) does not require robbery or an attempted robbery and conviction for robbery under 18 U.S.C. § 2111 does not require killing or attempted killing of another person, the precise act prohibited by §§ 18.2-31.4, -25 of the Code of Virginia is not specifically prohibited by either of the federal statutes under which Owens was charged in other counts.

We find equally unavailing Owens' argument that application of the ACA was unnecessary because the Government could have charged him with attempted murder under 18 U.S.C.§ 1111. Section 1111, however, does not require that the attempted murder be committed during the commission of a robbery or attempted robbery. Accordingly, we do not find that this statute, or any other federal criminal statute, specifically prohibits the precise conduct prohibited

4

under the Virginia criminal statutes in question. Because the ACA was properly applied to Owens, the district court did not err in denying Owens' motion to strike count eight of the indictment.

Owens next claims that the court erred in denying defense counsel's motions to withdraw as counsel. The denial of a motion to substitute counsel is reviewed under an abuse of discretion standard. See United States v. Mullen, 32 F.3d 891, 895 (4th Cir. 1994). To determine whether the district court abused its discretion we consider three factors: (1) the timeliness of the motion; (2) the adequacy of the court's inquiry into the defendant's complaint; and (3) whether a total breakdown in attorney/client communication had developed such that it prevented the attorney from putting forth an adequate defense. See id.

After approximately two months of representation and less than a month from trial, defense counsel moved to withdraw based on a letter written by Owens. Owens wished to have another attorney, apparently because he was not satisfied with defense counsel's service. By this time, defense counsel had filed several motions on Owens' behalf and interviewed a key witness. Defense counsel did not state that he was unable to prepare because of a lack of communication with Owens. Under such circumstances, we find that the court did not abuse its discretion in denying this motion to withdraw.

Three days prior to a hearing on the motion to suppress the photographic identification and just over a week away from the trial, Owens terminated discussions with defense counsel. Defense counsel, accordingly, again moved to withdraw as counsel on the day of the hearing on the motion to suppress the identification. When addressed by the court, Owens simply maintained that defense counsel presented him with a plea Owens considered unacceptable and therefore thought that counsel's representation was not adequate. The court denied the motion, holding that another attorney could not reasonably be prepared by the trial date, and that Owens was not entitled to counsel of his choice. Other than bare allegations, Owens has not shown how the alleged lack of communication between him and defense counsel prevented him from receiving an adequate defense. Under these circumstances, we find no abuse of discretion.

5

Last, Owens contends that the court erred in denying his motion to suppress the photographic identification conducted in Wilson's hospital room. Findings of fact made by a district court in ruling on a motion to suppress are reviewed for clear error, but the ultimate suppression decision is reviewed de novo. See United States v. Rusher, 966 F.2d 868, 873 (4th Cir. 1992). A court must engage in a two-step inquiry in determining whether identification testimony is admissible. See United States v. Wilkerson, 84 F.3d 692, 695 (4th Cir. 1996). First, the defendant must establish that the identification procedure was impermissibly suggestive. See Manson v. Brathwaite, 432 U.S. 98, 110 (1977). Second, even if the procedure is found to be unduly suggestive, the in-court identification is valid if it was reliable. Id. at 114.

We may proceed directly to the reliability of the identification without determining whether the defendant has met the threshold requirement of suggestiveness. See Holdren v. Legursky, 16 F.3d 57, 61-62 (4th Cir. 1994). In evaluating the reliability of the identification, we consider: (1) the witness's opportunity to view the perpetrator at the time of the crime; (2) the witness's degree of attention at the time of the offense; (3) the accuracy of the witness's prior description of the perpetrator; (4) the witness's level of certainty when identifying the defendant as the perpetrator at the time of the confrontation; and (5) the length of time between the crime and the confrontation. See Neil v. Biggers, 409 U.S. 188, 199-200 (1972).

Because we find the identification reliable under Biggers, we do not address the question of the alleged suggestiveness of the pre-trial line-up. Owens primarily contends on appeal that the district court ignored Wilson's medical condition and its effect on the reliability of Wilson's identification of Owens. Wilson observed his assailant at close range on the day of the offense. Furthermore, he unequivocally chose Owens' picture from the group of photos presented to him. The trial court heard significant testimony from medical care professionals with specific knowledge as to Wilson's cognitive and visual abilities. In light of all the evidence presented, we find no error in the trial court's conclusion that Wilson's pre-trial identification of Owens was reliable and admissible.

Accordingly, we affirm Owens' conviction and sentence. We dispense with oral argument because the facts and legal contentions are

adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED